# Meadows *v.* The State.

## *Murder.*

(Decided June 12, 1913. 62 South. 737.)

1. *Criminal Law; Province of Court and Jury; Instructions as to Duty.*—The circumstances surrounding the return of the verdict and the instruction of the court relative thereto examined, and it is held that in view of the speedy return of the verdict following the remarks of the court, the intsruction or reprimand of the court had a tendency to coerce a verdict, and for this reason should be set aside.

2. *Same; Verdict; Agreement to Disagree.*—A paper returned by the jury into court reading, "We, the jury, agree to disagree," was not a verdict, but only information to the court that, after long deliberation, the views of the jurors were so divergent that they could not agree upon a verdict.

3. *Same; Verdict.*—A verdict is the true saying of twelve impartial, fair-minded men who arrive at a conclusion because of their duty to do so under the evidence, and not because they are coerced, either knowingly or unknowingly, by the trial judge.

4. *Trial; Exceptions to Oral Charge; Time.*—Exceptions to the oral charge of the court must be made in the presence of the jury and before it retires to be availing.

5. *Same; Reprimand to Jury; Exceptions.*—Where the jury came into court with a form of a verdict which informed the court that they had agreed to disagree, and the court told them to return to their deliberation and not to come back with anything like that, which was in absolute contempt of court, though not so intended, the exceptions to the language of the court, taken after the jury had returned to the jury room, was sufficient to present the question of the propriety of such instructions or reprimand.

(McClellan, J., dissents. )

APPEAL from Pike Circuit Court.

Heard before Hon. A. H. ALSTON.

Henry Meadows was convicted of murder in the first degree and he appeals. Reversed and remanded.

J. A. CARNLEY, and BOYKIN OWENS, for appellant. The action of the court in sending the jury back to their room with the reprimand given was in effect, to coerce a verdict.—*DeJarnette v. Cox,* 128 Ala. 518; *Phoenix I. Co. v. Moog,* 81 Ala. 343; *Green v. Telfair,* 11 How. Pr. 260. The judgment and sentence is insufficient.—*Gray v. State,* 55 Ala. 88; *Wright v. State,* 103 Ala. 96; Freeman on Judgments, sec. 46. Counsel discuss other matters not discussed in the opinion, which are not deemed necessary to be here set out.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The exceptions to the reprimand of the court were not taken until after the jury had retired, the question was not otherwise raised, and the motion appears only in the bill of exceptions. Motions in arrest of judgment should be shown by the record.—*Ex parte Knight,* 61 Ala. 482; *Diggs v. State,* 77 Ala. 68; *Taylor v. State,* 112 Ala. 69; *Hampton v. State,* 3 Ala. App. 24. Motions for new trials in criminal cases are not revisable.—*Ferguson v. State,* 149 Ala. 21. The court cannot be put in error for refusing to receive an improper verdict, and in-

structing the jury to retire and consider further, or to amend a defective verdict.—*Dentler v. State,* 112 Ala. 70; *Allen v. State,* 79 Ala. 34; s. c. 52 Ala. 391; *Underwood v. State,* 2 Ala. 744.

DE GRAFFENRIED, J.—The following is the language of Henry J. Caldwell, Judge of the United States Circuit Court: "From an old law book on the British Constitution, printed more than 200 years ago, this extract is made: 'By the laws of King Ethelred, it is apparent that *juries* were in use before the Conquest, and they are, as it were, *incorporated with our Constitution, being the most valuable part of it;* for without them no man's life can be impeached (unless by Parliament), and no one's liberty or property ought to be taken from him.' The italics are in the book. In the judgment of Englishmen the right of trial by jury continues to this day to be the most valuable right secured to them by their Constitution. * * * Lord Commissioner Maynard declared: 'Trial by jury is the subject's birthright and inheritance as his lands are, and without which he is not sure to keep them or anything else. This way of trial is his fence and protection against all storms of power.' And that great constitutional lawyer, Lord Camden, said: "Trial by jury is indeed the foundation of our free Constitution; take that away and the whole fabric will soon moulder into dust.' * * * In an English law book printed a century and a half ago, the author declares: 'One of the most valuable branches of our laws is that which relates to juries, whose antiquity is beyond the reach of record of history; they have the same era with our Constitution, which cannot survive them; our liberty must expire with them, as the animal body with its most vital parts.' "—14 Am. Cr. Rep. 657, 658.

So firmly has the system of trial by jury become fixed upon the history of the English-speaking people, and so deeply has it become imbedded in their laws, that upon the adoption of each of our Constitutions the people have declared, as a part of their fundamental law, that the right of trial by jury shall remain inviolate.

1. "The line between the duties of a court and jury * * * is perfectly well defined, and the rigid observance of it is of the last importance to the administration of systematic justice. * * * In this way court and jury are made responsible, each in its appropriate department, for the part taken by each, * * * and in this way alone can errors of fact and errors of law be traced * * * to their proper sources."—*State v. Smith,* 6 R. I. 34; Proffatt on Jury Trial, p. 373, note.

"Those who have carefully studied this system have repeatedly pointed out the necessity of keeping [the court and the jury] each in its appropriate sphere, as the certainty and fixedness of our law, as well as the utility of the jury system, depend upon the separation between the duties of the judge and those of the jury." —Proffatt on Jury Trial, § 306a, p. 373.

2. If a trial judge is permitted to coerce a jury into a verdict, then the value of the system of trial by jury is at an end. In the present case the jury retired to deliberate upon their verdict about 8 p. m., on October 1st. They remained in the jury room until 11 p. m., when they were taken by the sheriff to a lodging place where they spent the night. At 7 a. m. of October 2d they again returned to the jury room, where they remained until 11 a. m. of that day. At that time they returned into the courtroom and handed the clerk a paper writing. The presiding judge then asked the jury if they had agreed upon their verdict, and they replied that they had. The clerk thereupon read, under the

direction of the trial judge, the paper writing which had been handed to him by the jury, and which was as follows: "We, the jury, agree to disagree." The court thereupon said to the jury: "Gentlemen, return to your room and resume your deliberations, and don't come back any more with anything like that. While I am sure that you did not mean it, yet such is absolutely in contempt of court." In about one hour after that time the jury returned into court with a verdict of guilty, and saying that the defendant should suffer death. It is not for us to say—and we by no means say—that the trial judge intended, by the above remarks, to coerce the jury into a verdict. We do hold, however, that the remarks had such a tendency, and from the speedy verdict which followed the remarks we are of the opinion that the verdict was probably influenced by the said remarks of the presiding judge. Before those remarks were made the jury had been out of the courtroom for 15 hours, and during 7 of those hours had been in the jury room deliberating upon their verdict. At the time those remarks were made the jury had, in effect, just stated to the court that they had come to the conclusion that they were in such a hopeless disagreement about a verdict that they could not arrive at a verdict. In one hour after that, however, all disagreements had disappeared, and a verdict imposing the highest penalty known to the law had been rendered against the defendant.

Of course, by a somewhat *strained* construction of the language of the paper writing and of the conduct of the jury in bringing it into court as their verdict, this court, to uphold the action of the trial judge, might say that the jury had simply determined to disregard their sworn duty to try the issues in the case and to render a true verdict according to the evidence, and that they had

determined to disregard the evidence and simply, without regard to their convictions, had "agreed to disagree." This language of the jury and their conduct on the named occasion should be given, however, an honest and a fair interpretation; and, so interpreting it, the jury, we think, by what they said and did meant to inform the court, and did in fact inform the court, that after many hours of deliberation, their views arising out of the evidence were so divergent that they had come to the conclusion that they could not agree upon a verdict. The jury may have understood the trial judge, in his remarks to them when they brought in the paper writing, to say in effect, "Go back to your jury room. It is a contempt of this court for a jury not to be able to agree upon a verdict. Don't come back into this courtroom without a verdict." At any rate, when the jury did come back into the courtroom they brought in a verdict, and they knew, when they did so, that they were not then subject to the censure of the court.

"There should be nothing in the intercourse of the trial judge with the jury *having the least appearance of duress or coercion.*"—*Phoenix Insurance Co. v. Moog,* 81 Ala. 343, 1 South. 115; *De Jarnette v. Cox,* 128 Ala. 518, 29 South. 618; *Shaw v. State,* 79 Miss. 577, 31 South. 209.

In this case we adopt the language which was used by this court in *De Jarnette v. Cox, supra,* viz: "The fact that a verdict was very soon thereafter rendered, notwithstanding the jury had stated to the court that it was impossible to come to a verdict after an effort of more than a day, we think reasonably and satisfactorily shows that the verdict was not uninfluenced by what the court had said."

In the instant case we think that the trial judge might have explained to the jury that "an agreement to dis-

agree" was not a verdict, that he would not then discharge them, and that they might return to their rooms and further deliberate upon the case. This course he did not pursue, and we think that the course which he did pursue was calculated to coerce a verdict, and that it probably did so.

A true verdict is the truthful saying of 12 impartial, fair-minded men, who arrive at a conclusion because it is their duty, under the evidence, to do so, and not because they are coerced, whether wittingly or unwittingly, by a trial judge so to do.

In our opinion the question above discussed is properly presented by this record.

Our rules require a party who reserves an exception to the oral charge, or any part of the oral charge, of a trial judge to a jury, to do so in the presence of the jury and before the jury retires. The reasons for this rule are well known, and need not be here repeated.

In the. instant case the exception was reserved, not to the oral charge or to a part of the oral charge of the trial judge to the jury, but to remarks of the trial judge which were calculated to coerce the jury into a verdict, and which remarks were made by the trial judge after the case had been given in charge to the jury. When, in the instant case, the defendant reserved his exception to those remarks, the jury were in the jury room in the same building with the trial judge; and, if the trial judge had desired to retrace his footsteps and to withdraw the objectionable remarks, he could easily have had the jury brought back before him and have done so. This he did not do, and the verdict followed as we have above stated. If the defendant had waited until after the jury had rendered their verdict, before reserving his exception to this action of the court, such circumstance might afford an argument that the defendant had specu-

lated upon the chances of a verdict in his favor after the remarks were made, and that therefore the objection came too late.

3. We find nothing in the language of this court in *Phoenix Insurance Co. v. Moog, supra,* indicating that it is essential, in a case like the present, for an exception to be reserved by the party aggrieved *at the time the remarks are made and before* the jury retire to again resume their deliberations, in order that he may properly reserve such question for review by this court. In that case, as in this, the aggrieved party reserved his exception to the remarks of the trial judge *after* the jury had retired to the jury room and had resumed their deliberations. In that case this court said that the language of the trial judge "was not excepted to in such *form* that it can be assigned as error." If Judge Stone had thought that the exception came *too* late because not reserved at the time the language was used and in the presence of the jury, he would have said so. On the contrary, we think the learned judge in that case meant that the record showed that there was one exception to three separate portions of the remarks of the trial judge, that said three portions of such remarks were not separately or severally excepted to, and that as some of the portions of the remarks so excepted to were not erroneous, the exception must fall. Moreover, a part of the language excepted to in the case of *Phoenix Insurance Co. v. Moog, supra,* was an oral instruction of the trial judge to the jury, as to the rules which should govern them in their deliberations in the jury room, and in that case this court held that such instructions as to the manner in which the jurors should conduct themselves during their deliberations were not only not erroneous, but that they were to be approved. In the instant case the language did not constitute

an instruction on the law of the case, but constituted a reprimand to the jury.

It therefore seems to us that in the trial of this cause an error was committed, for which the cause should be reversed.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur.

McCLELLAN, J.—(dissenting.)—The entire recitals of the bill of exceptions touching the deliberations of the jury, their return into court, and the response of the court to the paper handed the clerk as a *verdict* are these: "The jury in this cause was charged by the court, and retired to consider the testimony. They retired to the jury room about 8 o'clock p. m. of October 1, 1912, where they continued in their deliberations until 11 o'clock p. m. of the same day. They were then taken by the sheriff or his deputy to the room prepared for them in the residence portion of the county jail, where they were cared for and kept together during the rest of the night. About 7 o'clock a. m. of Oct. 2, 1912, they again returned to the jury room in the courthouse, where they again resumed their deliberations. After continuing the deliberations until about 11 o'clock a. m. of said day, they returned to the courtroom, and in open court they handed to the clerk of said court the following written statement, and in response to the following question of the presiding judge: 'Gentlemen, have you reached a verdict?' answered in the affirmative, when the clerk of the court under the direction of the court, read what they had returned into the court as their verdict, which was as follows: 'We, the jury, agree to disagree.' Whereupon the court promptly said: 'Gentlemen, re-

turn to your room and resume your deliberations, and don't come back any more with anything like that. While I am sure you did not mean it, yet such is absolutely in contempt of court.' The jury returned immediately and promptly into the jury room, and after the jury had retired to the jury room to resume their deliberations counsel for the defendant excepted to the said remarks of the court to the jury and to each portion thereof. After counsel made such objections and exceptions the court did not make any further statement or remark to the jury explaining his words, and the jury again continued their deliberations, or stayed out, for a period of about one hour, when they again returned to the court with the following verdict: 'We, the jury, find the defendant guilty of murder in the first degree and fix the penalty at death.' Whereupon the court adjudged the defendant guilty of murder in the first degree, and on October 5, 1912, sentenced the defendant to be privately hung."

The bill of exceptions does not contain any reference to or recital of the evidence upon the issue of guilt vel non of the accused. For aught that appears the evidence was such as to admit of little, if any, fair doubt of his guilt. In this state of the bill, the reviewing court should be at least cautious in imputing prejudicial misconduct to a court in a case of this kind.—*Fairgrieve v. Moberly*, 29 Mo. App. 141, 150.

In order to find error as for misconduct of the presiding judge in respect of his remarks to the jury, it is manifestly necessary to affirm that the jury reported to the court a disagreement, an inability to reach a *verdict*. To so conclude is an immediate contraction of what the jury, in writing, reported, viz., that the jury had *agreed* to disagree. Of course the report made by the jury was not a *verdict*, notwithstanding it was formally,

[Meadows v. The State.]

expressly avowed that the jury had *agreed.* This agreement—this accord—was to *disagree* upon the issues submitted to the jury. A verdict is "the unanimous decision made by a jury and reported to the court, on the matters lawfully submitted to them in the course of the trial of a cause."—Bouvier. According to this accepted definition of a *verdict,* the affirmation by the presiding judge that the paper returned by the jury was *not a verdict* was consistent with obvious truth. Certainly the judge violated no rule of propriety or of law in thus justly, and within the scope of his undoubted powers, interpreting the paper · and in announcing to the jury that their return was not a *verdict.* Patently, neither error nor impropriety could be soundly predicated of this declaration to the jury.

There are but two alternatives open to a jury to which a cause is submitted, viz., one to agree upon and return a verdict, as defined ante; and the other to report a disagreement, an inability to agree on a *verdict.* The court *must not in any manner* threaten or intimidate the jury in order to affect their deliberations, and should avoid in every way the least appearance of duress or coercion.—*De Jarnette v. Cox,* 128 Ala. 518, 423, 29 South. 618. The duration of the deliberations by the jury is committed to the sound discretion of the court; and the exercise of that discretion, in a given case, will not be disturbed on appeal except for a clearly shown abuse thereof.—*Buntin v. Danville,* 93 Va. 200, 212, 24 S. E. 830.

"All who are familiar with jury trials know that juries are prone to report to the court their inability to agree, but, not being discharged, often render a verdict in a reasonable time thereafter. Accordingly, it is the duty of the court to keep the jurors together until it is satisfied that they have made an honest effort to agree,

and that their inability to do so is due to a conscientious difference of judgment. How long the jury should be kept together, before discharging them for inability to agree on a verdict, is a matter depending upon the circumstances of each case, and resting in the sound discretion of the court, which discretion will not be interfered with by a reviewing court except on a clear showing of abuse."—38 Cyc. pp. 1855, 1856.

Even where the jury has reported its *inability* to agree upon a verdict, the court may, in the exercise of a sound discretion, order further consideration by the jury, and, avoiding any appearance of duress or coercion, advise the jury of the desirability that a verdict be made, that, if practicable, a conclusion of the litigation may be attained, and that they cultivate a spirit of harmony.—*Phoenix Insurance Co. v. Moog*, 81 Ala. 342 et seq., 1 South. 108; 38 Cyc. pp. 1853, 1854.

It is obvious from the recitals of the bill of exceptions that the discretion reposed by law in the trial court was not abused in respect of the *duration* of the deliberations required of this jury.

The prevailing opinion is that the remarks of the presiding judge were improper, and calculated to affect the deliberations of the jury, and the fact that such was the effect upon the jury seems to be found by the majority, as upon the circumstance that the jury, in an hour, returned a verdict. Before attaining the last-stated conclusion of fact, prevailing with the majority, consideration should have been given the quite common experience of those familiar with jury trials which the editors of Cyc. in the first part of the paragraph quoted above, drew from the excellent opinion of the Virginia court in *Buntin v. Danville, supra*. To affirm that the verdict later returned was the product or result, in any degree, of the remarks of this judge, when no part of the evi-

[Meadows v. The State.]

dence of guilt submitted to the jury is made available to the judgment of this court is, it seems to me, a clear assumption that really amounts to a presumption of error by a reviewing court, contrary to the universal rule that on appeal error is *never* presumed. It is significant that not even the character or tendencies, much less the measure, of the evidence on the issue of guilt vel non is made available here on the review of a matter calling pointedly, peculiarly, for the state of the evidence in that connection. If the evidence of guilt was reasonably clear and satisfactory, surely the fact that the jury, after having *an agreement to disagree,* and after having been directed by the court to resume their deliberations on the case, returned a verdict of guilt within "about an hour" does not invite or justify the presumption that the jury made the verdict in response to anything the court there said. On the contrary, rectitude and honest observance of oath-emphasized duty require a presumption favorable to an untarnished, uncoerced verdict.

It is the duty of a court to exact of all respect for its dignity, to enforce a due decorum toward it, and to firmly command and compel obedience to its orders and judgments. Jurors are not excepted from the control of this indispensable power. In Code, § 4631, it is written: "Every court has power  *  *. *  (3) to compel obedience to its judgments, orders and process,  *  *  *  (4) to control, in furtherance of justice, the conduct of its officers, and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto."

And, because essential to orderly administration of the law, as well as consonant with the powers mentioned, it is established that a jury is bound to obey the instructions of the court given to it.—*Marcus v. State,* 89 Ala. 23, 8 South. 155; *Fleming v. L. & N. R. R. Co.,*

148 Ala. 527, 41 South. 683; *Wolf v. Delage,* 150 Ala. 445, 43 South. 856.

It appears from the bill that the jury was "charged by the court." The contrary not being shown by the bill, it is to be presumed that the jury were aware, or were made aware, of their duty in the premises. The paper they handed the clerk was an affront to the court. Its words expressed an idea wholly inconsistent with due respect for the court. It was, as the court said to the jury, a manifestation of contempt for the tribunal. The jury was commissioned to decide the issues of fact. They return and say to the court: *"We have agreed to disagree."* It cannot be soundly ruled, as it has not been ruled, that the court was without power or right to reprimand the jury thus affirmatively expressing its disrespect for the court. Did the court, in what it said, exceed the limits of a proper response to this action of the jury? With obvious correctness the court declared the paper to be no verdict, and that the action of the jury was contemptuous. Well within its power, it directed further deliberation by the jury. So the evidence of misconduct by the court must be found, if at all, in the statement, "and do not come back any more with anything like that."

If it is assumed (for the occasion only) that the remarks of the presiding judge are susceptible of two interpretations—one of which will conclude to error and the other against error—it has long been established that bills of exceptions are to be construed most strongly against the party excepting, and the appellate court will adopt that supporting the judgment.—*McGehee's Case,* 52 Ala. 224; *Dickens' Case,* 142 Ala. 49, 39 South. 14, 110 Am. St. Rep. 17; *Dowling's Case,* 151 Ala. 131, 44 South. 403. No reason appears for not observing this rule in this instance; for certainly the court was

[Meadows v. The State.]

justified in commanding the jury not to again return *for a verdict* an *agreement to disagree.*

But aside from this, by no possible interpretation of the remarks of the judge can it be said that he told the jury that they should not or could not report to that court a *disagreement on the issues submitted to them.* He did command the jury not to again report anything like that, viz., *an agreement to disagree.* In what other words could the court have couched this authorized command? In what different form could the court have expressed its plain duty in response to an affront to the dignity of the court? It is not to be supposed that a jury, capable of framing such a satire upon its function and that of the court as this jury did, were so obtuse as to misunderstand so plain and simple a statement as the court made. Manifestly the court was under no duty to anticipate the perversion of the plain meaning borne by the words used. If trial courts are to be held to such a duty, a departure will be wrought from an universally accepted rule that the words used in utterances, by courts, to juries "must be taken in their ordinary and popular acceptation, and will not be subjected to analytical criticism. They will be construed according to their essential meaning, and refined distinctions will not be indulged in."—38 Cyc. p. 1777.

In my opinion the presiding judge was guilty of no misconduct whatever in the premises.

Moreover, as appears from the bill, the exception "to the said remarks of the court" was attempted to be taken *after the jury retired.* In order to avail to present the matter for review on appeal, the exception should have been taken *before the jury retired* from the presence of the court.—*City Council, etc., v. Gilmer,* 33 Ala. 116, 133, 134, 70 Am. Dec. 562; *Tyree v. Parham,* 66 Ala. 424, 432; *Hayes v. Solomon,* 90 'Ala. 520, 522,

7 South. 921; *Reynolds v. State,* 68 Ala. 502, 507; *Moore v. State,* 40 South. 345, 346; *Phoenix Ins. Co. v. Moog,* 81 Ala. 335, 342-344, 1 South. 108; *Earp v. Stephens,* 1 Ala. App. 447, 55 South. 266; *Tice v. State,* 3 Ala. App. 164, 167, 57 South. 506. The reason underlying the rule is obvious, and was sufficiently stated in the first decision cited above.

The case of *Phoenix Ins. Co. v. Moog, supra,* is in immediate point. The prevailing opinion necessarily conflicts with that in the *Moog Case, supra.* The effort is made in the prevailing opinion to distinguish the *Moog Case* from that under review. The transcript in the *Moog Case* has been consulted by the writer, and the transcript confirms the truth of the sixth headnote, which reads: "6. Same—Exception—When Too Late. It is too late to except to such instructions after the jury have again retired."

On page 342 of 81 Ala., on page 108 of 1 South., in the body of the opinion, appears an accurate restatement and quotation from the bill of exceptions on this point. It need not be repeated here. Following what appears at the page, note the bill of exceptions recites (quoting it): *"After the jury had retired* to their room, the defendant, by its counsel, excepted to so much of the said statement of the court to the jury as stated to them that it was the duty of the jurors to cultivate a spirit of harmony, and to arrive at a verdict if they could; also, to so much of said statement as told the jury what had occurred on previous trial of the cause; also to so much of the said statement as told the jury that it was the impression of the court that it would have to keep them together until the end of the term unless, before that time, they agreed upon a verdict. And the said defendant, by its counsel, now excepts to so much of said statement to said jury as is above stat-

ed and set down, and to each portion of the same as so excepted to, and asks that this may be signed and sealed as a bill of exceptions in the cause. * * *" It is hence too evident for doubt that this court ruled, as the sixth headnote states, that the exception was too late after the jury again retired and that the remarks of the trial court were taken and considered as *instructions* to the jury. Clearly the attempted exceptions to the remarks of the court were beyond criticism on any other ground.

The language of the court in the *Moog Case* was very pointed, emphatic, and strong in its quality of urging the return of a verdict by the jury. But, notwithstanding, this court consistently applied the long-established rule announced in the *Gilmer Case, supra.* If the words used in the *Moog Case* were, as there held, *instructions,* then surely the like conclusion should have prevailed in the case at bar. There was not in the *Moog Case* the remotest allusion to the *law* of the case. The whole tenor and effect of the remarks was to promote a verdict and avert a mistrial.

In my opinion an affirmance should be entered.