LEIGH M. CLARK, Retired Circuit Judge.
Appellant was convicted of robbery and sentenced to imprisonment for ten years.
Chris C. Gray, the alleged victim, testified that on May 20, 1978, about 5:00 or 6:00 P.M., he, James Moore and Joe Deck-son were at the home of Mrs. Ollie Graham when defendant approached the four of them and asked Gray to take him somewhere in return for a dollar. Mr. Gray agreed to do so, but thereafter Mr. Gray talked with Mrs. Graham about the matter, and Mrs. Graham told Mr. Gray that he shouldn’t take defendant in an automobile because defendant was drunk. According to Mr. Gray, defendant had gone to the automobile to wait for Mr. Gray; after talking with Mrs. Graham, Mr. Gray went to defendant and told him he could not take him in the automobile; Mr. Gray then returned to Mrs. Graham’s house. Defendant followed him there and told Mr. Gray to return defendant’s dollar to him; Gray replied that defendant had not given him a dollar. An argument ensued as to whether defendant had given Mr. Gray a dollar. Defendant pointed a pistol at Mr. Gray and told him to give him the dollar, which Mr. Gray did. Upon receipt of the dollar, defendant left the premises.
Mr. Gray was corroborated by the testimony of other witnesses. Upon conclusion of the State’s evidence, the defendant rested.
There is no contention that the evidence was not sufficient to support the conviction. We should note, however, that there was considerable evidence that defendant was intoxicated, that the undisputed evidence shows that he did not attempt to obtain more than one dollar from Mr. Gray, and that the evidence as a whole did not conclusively show that defendant did not honestly believe that the dollar obtained from Mr. Gray was a dollar that Mr. Gray had received from defendant in consideration of Mr. Gray’s promise to transport him in an automobile. In other words, the evidence does not conclusively show that defendant had the requisite felonious intent to justify a conviction of robbery, but the issue was one for the jury to decide.
A major insistence of appellant is that the trial court erred in not charging the jury on lesser included offenses of “assault and assault and battery.” The' insistence is brought to this Court via Rule 10(f) of Alabama Rules of Appellate Procedure, whereby appellant petitioned the trial court to correct the record on appeal so as to show that “Mr. Morris Brooks and Mr. David Miller representing the State approached the bench and orally requested that the Court further instruct the jury by including charges that the offense of robbery includes the lesser included offenses of assault and- assault and battery” and that the court “refused to give the lesser included offense charge requested by the State’s attorneys.” The trial court ordered that the record be corrected as follows:
“. [B]y adding to the record at the point following Defense Counsel’s exceptions to the Court’s initial jury instructions, the following language: MR. MILLER: ‘Your Honor we request that the Court instruct the jury that assault and assault and battery are lesser included offenses in the offense of robbery.’ THE COURT: ‘Well, I will deny that request.’ ”
We agree with appellant’s contention that in a trial on an indictment for robbery, if the evidence, according to any reasonable theory, presents a controversy whether the particular conduct constitutes robbery on the one hand, or some lesser included offense(s) on the other, defendant is entitled to have the court charge on the lesser included offense, as well as on any *202 lesser included offenses if more than one lesser included offense. Kelly v. State, 235 Ala. 5, 176 So. 807; Carter v. State, Ala.Cr.App., 340 So.2d 94, (1976). Numerous other cases support such principle. The record, as corrected, shows that the request for the particular charge was made orally. To place the trial court in error for its denial of the oral request would contravene the uniformly accepted rule that requests for instructions in addition to those given in the court’s oral charge must be in writing, the principle being stated as late as Harris v. State, Ala.Cr.App., 358 So.2d 482, cert. denied, State ex rel. Attorney General, Ala., 358 So.2d 487 (1978) and Hurst v. State, Ala.Cr.App., 356 So.2d 1224 (1978).
Appellant seems to attempt to support his argument on the point by stipulation between opposing trial counsel that the charge was requested by both of such counsel. Out of fairness to all concerned, it should be stated that in the trial court’s order on the petition to correct the record it was stated that neither the court nor the court reporter recalled the requested charge. It should be further observed, we think, that if the trial court had given the charge as requested, such action would not have been in compliance with the principles of law applicable to the facts in this case.
We agree with appellant that there was a reasonable basis for a finding by the jury that defendant was not guilty of robbery, but that he was guilty of an assault. However, there is no reasonable basis supported by the evidence for a finding that defendant was guilty of an assault and battery. There is no evidence of any “touching of another,” which must be shown to establish a battery. Jacobi v. State, 133 Ala. 1, 32 So. 158 (1902). This is not true as to an assault. Tarver v. State, 43 Ala. 354 (1869).
Appellant complains that:
“Though the court properly instructed the jury on the essential elements of robbery, in both the initial instructions and the additional instructions to the jury the Court made several erroneous, misleading, and confusing comments on the element of intent. On at least four occasions the Court defined the element of felonious or larcenous intent in a circuitous manner by defining intent in terms of robbery of which it is but one element. On these occasions the Court stated:
“ ‘That is, you must find that the defendant intended to commit robbery on this occasion . . . ’
“ ‘did the defendant intend to rob C. C. Gray and did he intend to commit an act of robbery.’
“ ‘. .as did he intend to rob the man that says he was robbed.’ “ ‘Was that the intent, to rob.’ ”
We can understand appellant’s concern as to the possibility that the court’s oral charge did not fully cover all of the principles of law to which he would have been entitled, if he had requested them in writing, but we do not find in the quoted portions of the court’s oral charge instructions that could be held to be erroneous. Appellant expressly acknowledges that in the court’s oral charge, it was stated that “the parting of the property must have been with a larcenous intent,” but takes the position that the legal requisite of a felonious intent, a larcenous intent, was weakened by the court’s reference to the necessity for an “intent to rob.”
“In the absence of a statute to the contrary, there can be no robbery without a criminal, felonious, larcenous, or, under an express statute, a fraudulent, intent. The animus furandi, or intent to steal, is essential to the crime. In other words, there must be a criminal intent of a character including the specific intent to rob; the taking must be with the intent to deprive the owner of his property permanently. The element of force or intimidation is not a substitute for the intent to steal.” 77 C.J.S. Robbery § 22a.
We consider also appellant’s concern as to whether he obtained on the trial the full benefit of a principle of law that one is not necessarily guilty of robbery if in taking personal property from the person of another, by force express or implied, he is doing so under a bona fide claim of right,
*203 “As a general rule it is not robbery to take property under a bona fide claim of right or title thereto. Cases held within this rule and, therefore, not robbery, include the forcible taking, under a bona fide claim, of specific property or property taken as security, of gambling gains or losses, and of money taken from the alleged thief in reimbursement for money honestly believed to have been stolen. In order to come within the rule, however, the taker must in good faith believe that he is the owner of the property or entitled to its possession.” 77 C.J.S. Robbery § 22c.
As there was no evidence presented on behalf of defendant and as the record does not contain the arguments of counsel, we cannot tell whether the trial court should have charged the jury as to the theory of innocence by reason of any contention that defendant’s conduct was in the honest belief that he was only taking from Mr. Gray that which rightfully belonged to defendant. Whether so or not, we cannot place the trial court in error, in the absence of an appropriate request in writing by defendant setting forth applicable principles of law on the subject.
There are additional reasons why we cannot reverse the trial court for its instructions on the matter of the requisite intent. A large part of the court’s instructions in that respect, including the two last statements quoted above, occurred, according to the record, after the jury “retired to the jury room to deliberate their verdict.” Meadows v. State, 182 Ala. 51, 62 So. 737 (1913) and many subsequent cases.
Portions of the court’s oral instructions, other than those mentioned above, are targets of appellant’s insistence that there was error in the'court’s oral instructions. We deem it sufficient to state that we have given them consideration and find as to each of them, if it was erroneous, either that it was not stated in substance in any exception thereto or that the exception was -not taken before the jury retired to commence or resume its deliberations, or that the exception was not taken to what the court had instructed the jury, but to what the court had not instructed the jury. The last alternative is applicable to the following:
“We except to Your Honor’s charge concerning flight and saying flight could be considered as evidence of guilt but you fail to state the absence of flight could be considered to be evidence of innocence.”
While all concerned were in the process of determining what documents should be sent to the jury room with the jury, the following occurred:
“MR. CHANDLER: All right, sir, we further object to the indictment going out with the jury showing a list of the witnesses and the bond.
“THE COURT: I think we ought to test that out. This is a good time. I will overrule.
“MR. CHANDLER: Except. We except to each and every ruling.”
We believe that at times a defendant could be unjustly harmed by what appears on the back of an indictment and that at times it would be much.better that only a copy of the face of the indictment be sent to the jury room, if there is no objection by either party. If there is such an objection, the trial court can pass on it on its merits. Uniformly the back of an indictment has on it the names of the witnesses and the amount of bail fixed by the court. The names of the witnesses on the back of the indictment in this case included five witnesses who testified and two police officers who did not. The amount of bail fixed was ten thousand dollars. We recognize the practice to be that often the indictment in its entirety goes to the jury room and sometimes only a copy of the face of the indictment is submitted to the jury. There is no inflexible rule on’ the subject, and it is not for us to formulate one. We see no reasonable basis for holding that there was any substantial harm to the defendant by reason of the action of the court to which the objection was made. The overruling of defendant’s objection was not erroneous.
In one of the grounds of defendant’s motion for a new trial, it is alleged:
*204 “The defendant is precluded from a meaningful appeal of said verdict due to the court reporter’s inability to prepare a complete record of trial in the said case.”
Appellant ties this ground to a portion of the transcript of the evidence containing the testimony, on direct examination and cross-examination, of the witness C. C. Gray. In about twelve of the purported answers of the witness to questions asked him, we find parenthetical statements by the court reporter to the effect that the answer or part of the answer is inaudible or unintelligible. At times the word “illegible” is used, which we deem to be inadvertent and self-correcting as intending “unintelligible,” as to which there is no contention to the contrary. During the first part of the testimony of the witness on direct examination, the following is shown.
“Q Where did you first see Prank McGee on that day?
“(Court Reporter’s Note: This witness had a very serious speech impediment. This fact was called to the attention of the attorneys for the State and defendant by the Court Reporter on numerous occasions during the witness’ testimony. Those portions of the witness’ testimony will be shown by the Court Reporter as unintelligible or illegible indicating the Court Reporter was unable to understand that portion of the testimony because of the said speech impediment.)
During the remainder of the testimony of the witness on direct examination, the following is shown:
[[Image here]]
“A She said don’t fool with him.
“Q Excuse me, what was that she said don’t fool with him?
“A She said, don’t fool with him because he is drunk and I told him I can’t go, I can’t go (a portion of the witness’ answer at this point was illegible.) and he came back around there.
[[Image here]]
“Q What did he say while he was pointing that gun at you?
“A He told me to give him the damn dollar.
“Q Said give you the damn dollar, give you the damn dollar?
“A (The first part of the witness’ answer inaudible.) I went in my back pocket and give him a dollar.
“Q You gave him a dollar?
“A Year, I had to give him one. (Last portion of answer inaudible.)
[[Image here]]
Difficulty in understanding . the witness continued into the cross-examination of him, of which the following are illustrative:
[[Image here]]
“Q What were these other three people you named, what were they doing when you saw Mr. McGee.
“A We was laughing and talking. (Remainder of answer illegible.)
“THE COURT: You are going to have to. go a little slower, I’m afraid, we just can’t understand.
“A I had been to the store. I had been to Quik Chek
[[Image here]]
“Q Did you ever see him or meet with him anywhere else other than when he came through Mrs. Graham’s yard when you saw him?
“A I see him coming through there. Some times he comes through there.' (Here followed a portion of his answer illegible.) I had seen him come through there lots of times.
[[Image here]]
“A He came back around there and he said, hey, give me my damn dollar and I said, what dollar and he said, what dollar, my dollar to carry me to Fifth Court. He said, give me my damn dollar and I said, you didn’t give me a dollar and he said, I did too, and I said, no, you ain’t. (Here followed a portion of the the answer illegible.) and so Mother Graham said give that man a dollar (Here followed a portion of the answer illegible.)
“Q Mr. Gray, when you refused to take Mr. McGee, he told you to give him his dollar?
“A Yeah.”
*205 No effort is made by anyone to show that what was inaudible or unintelligible to the court reporter was not also inaudible or unintelligible to the jury. No effort is made to show that such answers were intelligible or audible to anyone. If they were, no effort is made to show what the answers omitted from the transcript were. It appears that no effort was made to present to the trial court, and no effort has been made to present to this Court, the language, or the substance of the language, of the witness that was inaudible or unintelligible to the court reporter. Taking into consideration all of the record as to the answers of the witness, it is difficult to come to a conclusion, and impossible for us to come to a reasonably certain conclusion, that anything was omitted from the transcript of the evidence that would materially affect the issues raised on the motion for a new trial or the issues raised on this appeal. The trial court was not in error in overruling defendant’s motion for a new trial.
We find no error in the record, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.