James Everett Voyles was indicted in May 1988 by a Mobile County grand jury in a five-count indictment. Count I charged that the appellant made and subscribed his Alabama personal income tax return for the year 1983, which contained a written declaration that it was made under the penalties of perjury, and which he did not believe to be true and correct as to every material matter (§ 40-29-115(1), Code of Alabama 1975). Count II charged the same offense with respect to the appellant's 1984 Alabama income tax return. Count III charged that the appellant, while he was vice-president of Packards, Inc., which conducted a business under the name "Bentley's", willfully failed to truthfully account for and pay over to the Alabama Department of Revenue state income taxes which were withheld from wages of Bentley's employees during the fourth quarter of 1983 and which were due and owed to the State of Alabama (§40-29-111, Code of Alabama 1975). Count IV charged the same offense as Count III with respect to the first, second, third, and fourth quarters of 1984. Count V charged that the appellant, while he was vice-president of Packards, Inc., willfully failed to *Page 32 
truthfully account for and pay over to the Alabama Department of Revenue state sales taxes which were due and owed to the State of Alabama (§ 40-29-111, Code of Alabama 1975). Counts III and IV of the indictment were dismissed. As to Count I, the jury found the appellant guilty; as to Count II, the jury found the appellant "[g]uilty of the lesser-included offense of willfully delivering a return known by him to be fraudulent or to be false as to any material matter," and as to Count V, which was referred to as Count III in the jury verdict form, the jury found the appellant "[g]uilty of the lesser-included offense of willfully failing to pay over sales taxes collected and due and owing the State of Alabama." The trial judge sentenced the appellant to three years' imprisonment on the Count I conviction, and to one year's imprisonment in the county jail on each of the other two convictions.
 I
After the jury had deliberated for approximately two and one half hours, they returned to the courtroom and the following occurred:
"THE COURT: All right. Who is in charge here? You are Mr. B.?
"JUROR B.: They elected me as the foreperson.
"THE COURT: Congratulations, sir.
(Laughter)
"THE COURT: I looked out of the window a minute ago and noticed the flaming colors of the sunset in the west. I sort of hate to keep people down here after dark if it's not necessary, but, if, on the other hand, you think you are on the verge of doing something, I will be glad to bear with you in that regard, or, otherwise, you can start afresh in the morning. What is your preference?
"JUROR B.: At this point, I don't think it's real close.
"THE COURT: In that case, we had better start again in the morning. Well, we are sort of in a nine o'clock rut, so why don't we try that again? Is that okay with everybody?
"JUROR B.: That's fine.
"THE COURT: Okay. Good enough. Again, let me ask you, please don't discuss the case with anybody overnight, and please don't deliberate except when all twelve of you are in the jury room. I will see you at nine o'clock in the morning. Thank you very much.
"(At 5:35 p.m. proceedings were adjourned to Friday, January 26, 1990, at 9:00 a.m.)
 "FRIDAY "January 26, 1990
"(At 9:00 a.m. the jury retired to the jury room to commence further deliberations; at 11:00 a.m. the jury returned to the courtroom during which the following occurred:)
"THE COURT: Okay. Mr. B., it's getting on to two hours this morning. I thought I would check with you and see how you are doing.
"JUROR B.: Judge, we have made some progress with two of the counts.
"THE COURT: Okay. Do you want to take a little break now and —
"JUROR B.: Yes, sir, we can.
"THE COURT: All right. Why don't you do that. How long do you want? Ten minutes? Fifteen minutes?
"JUROR B.: Fifteen minutes.
"THE COURT: Okay. Well, just come on back at 11:20. Let me say this to you. I don't intend to suggest how long or how little time it should take you to resolve the matter. We aregoing to start having some time problems today because I havegot to go out of town this afternoon. So, you know, it's no problem. If need be we can start again next week, so I just — I don't suggest this for anything other than to let you know that there may be — we may be bumping up against that before long, but I don't mean to indicate that that should make you try to go faster or anything. Okay. 11:20.
 "(Recess)
"(At 11:20 a.m. the jury returned to the jury room to commence further deliberations; *Page 33 
at 12:30 p.m. the jury returned to the courtroom during which the following occurred:)
"THE COURT: Okay. Mr. B., what progress?
"JUROR B.: Judge, we feel like we have made some progress. There is an awful lot of stuff to look through.
"THE COURT: Yes, sir, I understand that. You have all those hundreds of exhibits, and I an not suggesting that you aren't doing everything that any conscientious jury could do. I am just trying to work out the timing.
"JUROR B.: Well, I would say up until our last break we made a great deal of progress, but since then we haven't made a lot of progress. But we are still working on it.
"THE COURT: Well, I tell you what, how about you seeing — do you think y'all can deliberate for another hour before you break for anything?
"JUROR B.: That's fine.
"THE COURT: All right. Why don't I check with you at 1:30,and if you have — by that time I will try to see if I can findsomeone else to deal with the case this afternoon — if we arefaced at that time with the question of whether or not tofinish this afternoon or next week. But we will deal with that them. Okay. I will see y'all at 1:30, then. Thank you.
"(At 12:35 p.m. the jury returned to the jury room to commence further deliberations)
 "(Jury not present:)
"THE COURT: Any exceptions to the Court's remarks?
 "[Defense counsel]
"MR. COPELAND: Yes, sir.
"THE COURT: Go right ahead.
"MR. COPELAND: If the Court please, we except to Your Honor's remarks. The cumulative effect of the Court's remarks at this juncture and of the Court's remarks to the jury the last time they were brought out is to convey to the jury that there is a definite probability they will either be brought back next week or that they will be forced to stay in there — Well, strike that. Just that there is a definite probability that they will be brought back next week. The Court's charge further conveyed to the jury it was coercive of a verdict in that if they do not reach a verdict by 1:30 that they are going to have to come back next week. Your Honor did not instruct them that no juror should surrender his individual convictions in order to obtain a verdict, and we would request that the Court bring the jury back out and inform them, number 1, that no jury — no juror should under any circumstances surrender his individual convictions solely for the purpose of obtaining a verdict, and number 2, that if they do not reach a verdict by 1:30 that they will not be brought next week.
"THE COURT: Well, the Court has at no time received any indication from the jury that they have the slightest problem about achieving unanimity, simply that it is reviewing the voluminous documents submitted to it by the parties, and by the same token, the Court has at no time indicated that the jury was under any duty to do anything other than conscientiously review the matter and attempt to arrive at a verdict. I note your exceptions.
"MR. COPELAND: The request for a supplementary instruction is denied, I take it?
"THE COURT: It is.
"MR. COPELAND: Thank you.
"THE COURT: Okay. See y'all at 1:30.
"(At 1:30 p.m. the jury returned to the jury room during which the following occurred:)
"THE COURT: Okay. Mr. B.
"JUROR B.: Judge, these are very dedicated people and we are all making a conscientious endeavor to do this and do it right. We cannot all get together.
"THE COURT: Well, I understand it's going to take time, and I understand that and respect that.
"JUROR B.: It almost seems like we are as far as we can go, to be perfectly frank with you. *Page 34 
"THE COURT: Well, I tell you what you do. Why don't you go to lunch now and give you time to clear your heads and all of that. How long do you want? An hour?
"JUROR B.: For lunch?
"THE COURT: Yes, sir.
"JUROR B.: That sounds good.
"THE COURT: Okay. Why don't you do that and be back here at 2:30. It may be that Judge McDermott will be talking to you this afternoon. As I told you, I have got to go out of town.Unless I can make some other arrangements, I think he will behere when you get back, or, if you would rather, we can justrecess and start afresh next week, and take the afternoon off.
Whatever you want to do.
"JUROR B.: I think the majority would rather come back thisafternoon.
"THE COURT: I don't see a whole lot of enthusiasm for that idea. Okay. Well, y'all be back at 2:30, then. Thank you.
 "(Jury not present:)
"THE COURT: Ladies and gentlemen, on the exhibits, when and if this jury ever returns a verdict, I am going to need y'all to get with the court reporter and get the exhibits together in numerical order and let's make sure we have got everything so we can get them filed in the clerk's office. Judge McDermotthas very graciously consented to baby-sit the jury for a whileafter we come back, so you will be dealing with him from thenon, and then — so, either it has been a pleasure dealing withyou, or I will see you Tuesday morning, one or the other,depending, of course, upon what Judge McDermott in hisunfettered judgment decides. Thank you.
"MR. COPELAND: Judge, I need to put something on the record.
"THE COURT: Yes, sir.
"MR. COPELAND: We except to Your Honor's comments to the jury when coupled with the Court's previous remarks further tend to coerce a verdict. The clear implication to this jury is that they are going to have to come back next week if they do not reach a verdict, and we except to it. We would ask that either you or Judge McDermott or you have Judge McDermott tell them when they come back that they are not going to be required to come back next week if they don't reach a verdict.
"THE COURT: Well, except for the foreman's indication that he was beginning to become apprehensive about the ability of the jury to reach a verdict, I don't think we have been told yet that there was anything approaching an irreconcilable deadlock, so I deny your request for that instruction at this time, and note your exception.
"MR. COPELAND: I would further ask either you or you have Judge McDermott inquire of them if they are hopelessly deadlocked because the foreman's comment, to me, indicated a deadlock, and I think we need to know.
"THE COURT: Well, you may make that request of Judge McDermott. I deny it at this time.
"MR. COPELAND: All right, sir.
 "(Noon recess) "AFTERNOON SESSION
"(At 2:30 p.m. the jury returned to the jury room to commence further deliberations: at 3:15 p.m. the jury returned to the court room during which the following occurred; Judge Edward B. McDermott presiding:)
"THE COURT: Who is the foreperson of the jury?
"JUROR B.: I am, Judge McDermott.
"THE COURT: Has the jury been able to reach a verdict?
"JUROR B.: No, sir, we haven't.
"THE COURT: As I understand it, this was a three-count indictment and it was submitted to the jury on all three counts; is that right?
 "[Prosecutor]
"MS. MURPHREE: Yes, sir.
"THE COURT: Have you been able to reach a verdict on any ofthe three counts? Just a yes or no.
"JUROR B.: It's a yes and a no, I am sorry to say. Do you want me to elaborate on that? *Page 35 
"THE COURT: No. What I want you to do is to — you have beenfurnished a verdict form containing the different verdicts thatyou can return as to each count. If you would, as to the one ormore counts that you have reached a verdict in, if you wouldfill out the proper form as to that verdict or that count,then, in just a few minutes — if you have reached a verdict onany of them, okay, and then I will bring you back out in just aminute. But, if you have reached a verdict on a count, then Iwish you would return it, you know, as to that count, and wewill take a look at the situation — we will take a look at itas to whether or not to continue deliberating, or whether ornot to come back — when did he say? — Tuesday?
"MS. MURPHREE: Yes, sir.
"THE COURT: So, if you would, resume your deliberations. If you have reached a verdict on one or more of the counts, if you will just knock on the door, okay, I will have a bailiff attend you.
"(At 3:19 the jury returned to the jury room to commence further deliberations)
"MR. COPELAND: Can I take an exception, Judge?
"THE COURT: Yes.
"MR. COPELAND: If the Court please, Your Honor's comments coupled with those made earlier by Judge Kendall leaves the jury with the definite impression that they are going to have to reach a verdict, and it is coercing a verdict, and we except.
"THE COURT: Do you have an exception?
"MS. MURPHREE: No, Your Honor.
"THE COURT: Supposedly, they have reached a verdict in one or more of the counts, so we will just wait right here.
 "(Off the record)
"(At 3:27 p.m. the jury returned to the courtroom and delivered a verdict.)"
(R. 966-981) (emphasis added).
The appellant contends on appeal that the verdicts in this case were coerced due to the cumulative effect of Judge McDermott's and Judge Kendall's comments to the jury. We agree.
 " 'It is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict so long as it does not coerce or suggest which way the verdict should be returned. McMorris v. State, 394 So.2d 392
(Ala.Cr.App. 1980), cert. denied, 394 So.2d 404
(Ala. 1981); Allred v. State, 390 So.2d 1109
(Ala.Cr.App.), cert. denied, 390 So.2d 1114
(Ala. 1980); Lake v. State, 390 So.2d 1088
(Ala.Cr.App.), cert. denied, 390 So.2d 1093
(Ala. 1980).' Galloway v. State, 416 So.2d 1103, 1109 (Ala.Cr.App. 1982). 'In situations such as the one at issue, judges may, and frequently do, encourage jurors to continue deliberating in the hope that some agreement will be reached. This is never improper as long as the judge does not coerce the jury to reach a verdict or suggest to them a particular verdict. Strickland v. State, 348 So.2d 1105 (Ala.Cr.App. 1977); Jones v. State, 56 Ala. App. 444, 322 So.2d 735 (1975).' Murry v. State, 455 So.2d 53, 64 (Ala.Cr.App. 1983)."
Mahan v. State, 508 So.2d 1180, 1184 (Ala.Crim.App. 1986) (emphasis added).
 "It has been held that the words and deeds of the trial judge, in charging the jury, may not contain even 'the least appearance of duress or coercion,' Gidley v. State, 19 Ala. App. 113, 95 So. 330 (1923), and that the judge's charge 'must be examined so that the suspect language is tested in the whole context of its setting.' Orr v. State, 40 Ala. App. 45, 111 So.2d 627 (1958)."
Ex parte Morris, 465 So.2d 1180, 1183 (Ala. 1985). See alsoEvans v. State, 338 So.2d 1033 (Ala.Crim.App. 1976), cert.denied, 348 So.2d 784 (Ala. 1977).
In the case at bar, after the jury had deliberated for approximately four and a half hours, Judge Kendall told them that they may start having "some time problems" because he had to go out of town in the afternoons, and he indicated that the jury might have to "start again next week." However, at this point, Judge Kendall stated to the jury that this fact should *Page 36 
not "make you try to go faster or anything." The jury then resumed its deliberations. After only another hour of deliberations, Judge Kendall again brought the jury out to check on its "progress." He then told them to deliberate for another hour and he would check back with them. He again mentioned the possibility of the jury's returning the next week to complete its deliberations. At this point, defense counsel objected to the court's remarks on the ground that they were coercive because they indicated to the jury that if it did not come back with a verdict in one hour that the jurors would have to return the next week to continue deliberating. Defense counsel asked the court to inform the jurors that they should not surrender their individual convictions solely for the purpose of obtaining a verdict and that if they did not reach a verdict in one hour, that they would not be required to return the next week. The trial judge denied defense counsel's request.
An hour later, the jury returned and told Judge Kendall that the jurors "cannot all get together" and that it "seems like we are as far as we can go." Judge Kendall then told the jurors to go to lunch and that Judge McDermott would be presiding when they returned. He then asked if the jury wanted to recess for the afternoon and then it could "start afresh next week." The foreperson stated that the "majority would rather come back this afternoon." Judge Kendall then stated that he could see that there was not "a whole lot of enthusiasm for that idea [of returning next week for continued deliberations]." Defense counsel again objected to the trial court's remarks and asked Judge Kendall to tell the jury that it would not have to come back next week if it did not reach a verdict.
After the jury had returned from lunch and had deliberated for 45 minutes, the jury returned to the courtroom and Judge McDermott asked if it had reached a verdict. The foreperson replied that it had not. Judge McDermott asked if it had "been able to reach a verdict on any of the three counts" and the foreperson replied "It's a yes and a no." Judge McDermott then told the jury that "in just a few minutes — if you have reached a verdict on any [of the counts]" . . . "then I wishyou would return it" and then "we will take a look at the situation" as to whether to continue or to come back the next Tuesday. The jury then resumed its deliberations. Once again, defense counsel objected. Eight minutes after the jury resumed its deliberations, it returned to the courtroom and delivered a guilty verdict on all three counts (guilty of lesser included offenses on two of the counts).
In cases such as the one at bar, we must ascertain whether "the verdict-urging instruction[s] complained of merely terminated the jury's deliberations and forced a verdict for the mere sake of agreement, or whether it initiated a new deliberative process resulting in a genuine consensus." Annot.,Verdict-Urging Instructions in Civil Cases StressingDesirability and Importance of Agreement, 38 A.L.R.3d 1281, 1287 (1971). Here, we believe that Judge McDermott's comment to the jury that "in just a few minutes — if you have reached a verdict on any [of the counts]", when viewed in the context of both judges remarks to the jury, placed undue influence on the jury's reaching a verdict, and his comment, in effect, terminated the jury's deliberations. His comment was essentially either return a verdict in this case soon or it will probably be necessary to return next week.
In Ex parte Morris, after the jury had deliberated for about eight hours, the jury informed the trial judge that it was deadlocked. The trial judge told the jury that he was not going to declare a mistrial at this point in the trial, and he recessed the jury and told the jurors to return the next day to continue deliberations. When they returned the next morning, the trial judge asked the jury if it had reached a verdict and the foreperson stated that it had and that it had returned a guilty verdict. When the jury was polled, one of the jurors indicated that he did not agree with the verdict. The trial judge then stated: "That being the case, I think you need to continue your deliberations. As I told you earlier, I *Page 37 
will be back here at 5:00 o'clock this afternoon. I have a meeting that I have to attend but I will be back here by 5:00 o'clock." The jury resumed deliberations and returned a guilty verdict about two hours later. This court affirmed the judgment and held that the trial court's remarks were not coercive. However, the Alabama Supreme Court reversed and held that the judge's remark that "he would be back by 5:00 that afternoon . . . clearly put within the minds of the jurors a deadline for returning with a unanimous verdict." Ex parte Morris,465 So.2d at 1182. Likewise, Judge McDermott's statement that he would give the jury the opportunity to fill out the verdict form and would bring the jury out "in a few minutes," put a deadline in the jurors' minds that if they did not return a verdict on all of the counts within a few minutes, they would probably have to come back four days later to resume deliberations. Clearly, both Judge Kendall's and Judge McDermott's remarks about returning next week impressed upon the jurors that they needed to make a decision soon or that they would run the risk of recessing and returning four days later to continue their deliberations.
One of the circumstances most significant in this case is the fact that the jury returned a verdict only eight minutes after Judge McDermott made his remarks, despite the fact that the jury had told Judge McDermott, immediately before its final eight-minute deliberation session, that it had not reached a verdict and when asked specifically if it had reached a verdict on the count, the foreman replied "yes" and "no." Further, both Judge Kendall and Judge McDermott intimated each time they talked to the jury that if it did not reach a decision soon, it would have to return four days later and resume its deliberations. The record indicates that the majority of the jurors clearly did not want to come back the following week.
In Meadows v. State, 182 Ala. 51, 62 So. 737 (1913), after the jury had deliberated for seven hours, the jury informed the trial judge that it had "agree[d] to disagree." The trial court then stated, "Gentlemen, return to your room and resume your deliberations, and don't come back any more with anything like that. While I am sure that you did not mean it, yet such is absolutely in contempt of court." Meadows, 182 Ala. 51,62 So. at 738. The jury returned an hour later with a guilty verdict. The Supreme Court in Meadows found the court's remarks to be coercive in light of the short amount of time in which the jury returned its verdict after the trial judge's remarks. Likewise, in Gidley v. State, 19 Ala. App. 113, 115, 95 So. 330
(1923), this court stated:
 "The fact that a verdict was [rendered] very soon [after the court's allegedly coercive remarks] . . ., without further facts or without further explanation as to the law, [notwithstanding the fact that the jury had just told the court that they were having trouble reaching a verdict] reasonably shows that the verdict was not uninfluenced by what the court had said. The courts must, at all hazards, preserve the deliberations of juries from coercion, whether wittingly or unwittingly done, to the end that this safeguard to our liberties may be preserved."
In the case at bar, it seems incredulous that the jury, after deliberating for over seven hours and after having just made it known to the court it was having great difficulty reaching a unanimous verdict, could have settled all disagreements in such a complex case in a mere eight minutes. Compare Evans v. State,338 So.2d 1033 (Ala.Crim.App. 1976) (no indication that verdict was returned soon after trial judge's instructions); (no showing in record of when verdict was returned after judge's instructions); Mahan v. State, 508 So.2d 1180
(Ala.Crim.App. 1986) (although jury returned verdict 20 minutes after judge had urged deadlocked jury to continue deliberating, judge's remarks were not coercive, 10 or the 12 jurors had told the court further deliberations would be helpful); McGilberryv. State, 516 So.2d 907 (Ala.Crim.App. 1987) (although jury, who had been deliberating for less than three hours, returned verdict five minutes after trial judge's lengthy instruction, judge's instructions were not coercive and trial judge did *Page 38 
not set a deadline for the jury to return with a verdict);Freeman v. State, 453 So.2d 776 (Ala.Crim.App. 1984) (no indication that jury was having difficulty reaching verdict when jury returned a verdict soon after trial judge said that he may, at some point, have to end deliberations that day and that jurors would have to return a few days later to continue deliberating).
"A verdict of a jury should be the concurrence of 12 minds, derived from a consideration of the evidence, absolutely free of other influence." Gidley, 19 Ala. App. at 115, 95 So. 330. " 'There should be nothing in the intercourse of the trial judge with the jury having the least appearance of duress orcoercion.' Phoenix Insurance Co. v. Moog, 81 Ala. 343, 1 So. 115; De Jarnette v. Cox, 128 Ala. 518, 29 So. 618, Shaw v.State, 79 Miss. 577, 31 So. 209." Meadows, 62 So. at 738. Here, the trial judges' remarks and the surrounding circumstances, i.e., the short time in which the verdict was returned after the last of these remarks, the complexity of the evidence in this case, and the fact that the jurors were having difficulty reaching a verdict, convinces us that the judges' remarks did influence the jury's verdict.
A review of Judge Kendall's remarks to the jury convinces us that they did not, by themselves, "amount to undue coercion."Morris. However, when Judge McDermott's remarks are considered together with Judge Kendall's remarks and the other surrounding circumstances, it is clear that the cumulative effect of their remarks to the jury "exceeded the bounds of permissible instructions by coercing the jury into reaching a unanimous verdict which the jury would probably not have rendered but for such coercion." Franklin v. State, 502 So.2d 821, 827
(Ala.Crim.App. 1986), cert. quashed, 502 So.2d 828 (Ala. 1987). Our decision may have been different if Judge Kendall or Judge McDermott had given the instructions that were requested by defense counsel. Evans (judge specifically told jury that his instructions to continue deliberating were not for the purpose of coercing a verdict and that his instruction should not force them to surrender their convictions); Allred v. State,390 So.2d 1109 (Ala.Crim.App.), cert. denied, 390 So.2d 1114
(Ala. 1980) (judge's remark to jury, before it began its deliberations, that if it had not reached a verdict by late afternoon, he would send them to a motel for the night but that if it reached a verdict before then, it would be discharged, was found not to be coercive since it was made before jury began deliberating and the judge told the jury not to let this fact affect its verdict); Mahan (judge specifically instructed jury that he did not expect any juror to give up an opinion simply to reach a verdict).
 "It is not for us to say and we by no means say — that the trial judge[s] intended, by the above remarks, to coerce the jury into a verdict. We do hold, however, that the remarks had such a tendency, and from the speedy verdict which followed the remarks, we are of the opinion that the verdict was probably influenced by the said remarks of the . . . judge[s]."
Meadows, 62 So. at 738. Thus, justice requires that the judgment in this cause be reversed and remanded for a new trial.
 II
Upon retrial, if Bruce Wells again testifies for the prosecution, the trial judge should, if a proper predicate is laid by defense counsel, conduct an in camera inspection of Wells's pretrial statement to determine if this statement differs in any way from his trial testimony and whether the failure to allow defense counsel access to Wells's pretrial statement would be fundamentally unfair, as required by Exparte Pate, 415 So.2d 1140 (Ala. 1981).
Reversed and Remanded.
All the Judges concur. *Page 39