We granted certiorari on the single issue of whether the trial judge's jury instructions amounted to coercion of a verdict.
Petitioner Morris was indicted, by separate indictments, on several charges of embezzlement. After trial on the first indictment, she was acquitted. After a jury trial on the second indictment, however, she was found guilty and sentenced to two years in the state penitentiary. That judgment was affirmed by the Court of Criminal Appeals, Morris v. State, 465 So.2d 1173
(Ala.Cr.App. 1984), which found, specifically, that the trial court had not coerced a verdict from the jury.
The events upon which Petitioner bases her claim that the trial court coerced the jury's verdict are as follows:
After a jury trial before the Honorable Robert E.L. Key, Judge of the Circuit Court of Conecuh County, Alabama, the jury retired to begin deliberations on Wednesday, September 29, 1982, at 10:00 A.M. The trial judge, in the presence of the Petitioner, Petitioner's attorney, and the District attorney, addressed the jury:
 "I received a message shortly before dinner in which the jury said they were deadlocked which I chose not to mention when I let you go to dinner but I did receive it. I have now received another note through the bailiff saying you are still deadlocked. Let me say this to you: You have heard this case from start to finish and you know as much about it as any twelve people we could put in the jury box. The question as to how long you can deliberate is left to the Court and in my opinion you haven't deliberated long enough in this case."
During that meeting, a juror asked the following question:
 "JUROR: Are we here to decide whether she got the money from this check or whether she stole the money? There is proof enough that she got the money.
 "THE COURT: The question in this case is whether or not she obtained the money, having at that time the fraudulent intent to convert it to her own use. That is the question right there and you must decide that from all the evidence in this case. Is that a fair answer to your question?
 "JUROR: Yes, sir, but I don't think this is enough evidence.
"THE COURT: That is your prerogative. . . ."
Thereafter, the jurors retired to the jury room for further deliberations. At 3:35 P.M. the jury asked to meet with the court again, and the following transpired:
 "THE COURT: Ladies and gentlemen, I have got a note saying that you can't agree. I want to say this to you and I don't want to come across in the wrong way but you need to get down to business in this thing because I'm not about to declare a mistrial in this case today.
 "A JUROR: Judge Key, I'm the hold-up and if I stay down here until 5:00 o'clock, I'll have to tell a lie. . . .
 "THE COURT: We're not talking about 5:00 o'clock this afternoon. I mean 5:00 o'clock Friday afternoon because I mean business about this thing."
At 5:43 P.M. the jury had not reached a verdict and Judge Key addressed the jurors:
 "THE COURT: Ladies and gentlemen, it's my understanding that you have been unable, up to this point, to reach a verdict in this case. I certainly don't want to detain you any longer today. I know that we have been here since 8:00 o'clock this morning and I know that some of you were like I was — up before daylight this morning to be able to get here at 8:00 o'clock. You have given your full day and more to the State of Alabama today. Let me say this to the jury: I think that after you go home and have your breakfast in the morning, you will return here refreshed and hopefully in a position to sit down and discuss this matter and give credit to one another's opinion. I would never tell any juror that they should sacrifice any principle which they feel that they are bound to but on the other hand, sometimes we get on a *Page 1182 
principle one way or the other and we discover after looking at it different ways that perhaps we might not have been right in the position we took. . . . These are grave matters and they deserve, I think, a decision with all deliberate speed. That's a relative term and I want to let you have an abundant time within which to further deliberate the affairs of this case. With that admonition — had you rather come back at 8:00 or had you rather come back at 9:00 in the morning?"
After the jurors had left the courtroom, counsel for Petitioner moved for a mistrial on the ground that the jury was deadlocked. Judge Key replied:
 "THE COURT: It's pretty obvious to me they haven't reached a verdict because they haven't come in with one so I take it there is some one way and some the other — that being the case — and in my opinion they haven't deliberated yet half as long as they may have to deliberate. I'm going to get a verdict in this case. It will be good for you and your client and for the State of Alabama and everybody else. Suppose I entertained your motion to declare a mistrial? We have got to go back right through it. I presume you charge your client every time we come to court so it's just up to you about that but I'm not going to grant a mistrial at this time. I'm not even considering it. I'll tell you that right now."
The next morning, Thursday, September 30, 1982, at 9:23 A.M., the following took place:
 "THE COURT: Miss Gladwell, ladies and gentlemen of the jury, have you reached a verdict?
"JURY FOREMAN MAE GLADWELL: We have, Your Honor.
 "THE COURT: `We, the jury, find the defendant guilty as charged in the indictment.' Signed Elsie Mae Gladwell, Foreman.
 "MR. HARDEN: Judge, we would like to have the jury polled.
"THE COURT: All right, sir, is this your verdict?
"A JUROR: Yes, sir.
"THE COURT: Is this your verdict?
"Yes, sir.
"THE COURT: Is this your verdict?
"A JUROR: Judge, to tell you the truth, no.
 "THE COURT: All right, sir. That being the case, I think you need to continue your deliberations. As I told you earlier, I will be back here at 5:00 o'clock this afternoon. I have a meeting that I have to attend but I will be back here by 5:00 o'clock."
At this point, counsel for Petitioner again moved for a mistrial, stating as his grounds that the foregoing amounted to coercion. The motion was overruled and the jury retired again for further deliberations. The trial transcript reveals that "[a]t 11:20 A.M. the jury having reported that they had arrived at a verdict, Honorable James B. Watson, District Judge and Special Circuit Judge so designated by Judge Key to receive the verdict, came to Evergreen, the jury was called to the courtroom and in the presence of the defendant, her attorney and the district attorney [reported its verdict of guilty]." Each juror answered in the affirmative Judge Watson's question, "Is this your verdict?" Counsel for Petitioner renewed his motion for mistrial.
Petitioner urges this Court to take the initiative to "hereby overrule those controlling cases in Alabama which allow the use of the `Allen charge.'" This we refuse to do. The admonitions of this charge are as valid today as when Allen was decided in 1896:
 "While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury-room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds *Page 1183 
a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury-room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself." Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).
Indeed, "[i]t is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used." Showers v. State,407 So.2d 169, 171 (Ala. 1981). See, also, Ashford v. McKee, 183 Ala. 620,62 So. 879 (1913).
As Petitioner concedes, up to a point the trial judge's exhortation to the jury did not amount to undue coercion. Judge Key's initial statement to the deadlocked jury that they had not deliberated long enough, and his answer to the juror's question of whether they were to decide that "she got the money from this check or whether she stole the money," were reasonable and helpful responses. Even his statement that he expected a verdict in the case, when viewed alone, did not amount to the proscribed coercion of a verdict.
Petitioner argues, however, and we agree, that the record reveals the attitude of the judge becoming more vigorously "encouraging" with each encounter with the jury, and his admonitions to the jury appearing strident when examined in the context of the entire record of his exchanges with the jurors.
It has been held that the words and deeds of the trial judge, in charging the jury, may not contain even "the least appearance of duress or coercion," Gidley v. State, 19 Ala. App. 113,95 So. 330 (1923), and that the judge's charge "must be examined so that the suspect language is tested in the whole context of its setting." Orr v. State, 40 Ala. App. 45,111 So.2d 627 (1958).
The "whole context" within which we examine Judge Key's instructions to this jury is apparent from the trial transcript. Judge Key was made aware just before noon on Wednesday that the jury was deadlocked, and, upon reconvening that afternoon, he heard one juror express doubts as to the sufficiency of the evidence needed to find Petitioner guilty. Later that day, finding that the jurors still could not agree on a verdict, Judge Key made it clear that he was "not about to declare a mistrial in this case today." Thereupon, one of the jurors informed Judge Key that he was the "hold-up" and said, "[I]f I stay down here until 5:00 o'clock, I'll have to tell a lie," to which Judge Key replied, "We're not talking about 5:00 o'clock this afternoon. I mean 5:00 o'clock Friday afternoon because I mean business about this thing." But neither these remarks, nor those made late Wednesday afternoon in dismissing the deadlocked jury for the night, amounted to coercion of the jury. These instructions did not exceed the perimeters ofAllen; and Judge Key did not err at that time in denying Petitioner's motion for a mistrial.
While Judge Key's jury charge on Wednesday fell short of impropriety, nonetheless, the totality, or cumulative effect, of his charge is relevant to our consideration in testing the propriety vel non of his final instructions on Thursday. When the jurors returned with a guilty verdict at 9:23 Thursday morning, Judge Key polled the jurors and found that one juror could not say that "guilty" was his verdict. In sending the jurors back for further deliberations after this revelation, Judge Key ended his remarks by saying that he would be back by 5:00 that afternoon. This, we find, clearly put within the minds of the jurors a deadline for returning with an unanimous verdict. There can be no doubt that, at this point, Judge Key's "words and deeds" had crossed the "Allen line" and Petitioner's motion for a mistrial should have been granted.
Judge Key's knowledge of the serious misgivings of one juror in acquiescing in *Page 1184 
the guilty verdict, coupled with the judge's express determination to get a unanimous verdict from these twelve jurors, made his final words of "encouragement" coercive. The admonition contained in the judge's directive, we believe, placed an almost unbearable pressure upon the dissenting juror to accede to the wishes of the majority — the very juror who, as the trial judge knew from the events of the previous day, was the lone hold-out.
Central to our holding are the last instructions Judge Key gave to the jury before sending them back for their final period of deliberation. If the record were devoid of this last incident, and if the jury had returned a unanimous verdict and each individual juror had withstood the initial polling inquiry, we would not hold that the permissible limits of the"Allen charge" had been exceeded. But the record does reflect that Judge Key sent the jury back for further deliberations after one juror revealed that the verdict of "guilty" was not his individual verdict, observing to the jury that he would be back at 5:00 o'clock that afternoon. It is this final instruction, when viewed in light of the totality of the circumstances that occurred throughout the preceding day, that edged Judge Key's conduct over the prescribed line.
Our review of the record convinces us that, when examined in the full context of his instructions to the jury, the cumulative effect of Judge Key's final admonitions to the jury were, indeed, coercive and went beyond the "spirit of harmony" sought to be accomplished by the giving of an acceptable "Allen
charge." For this reason, we find that it was error for the trial judge to deny Petitioner's motion for a mistrial. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
MADDOX and BEATTY, JJ., dissent.