508 So.2d 1180 (1986)
Dale Elize MAHAN and Ronnie Benjamin Mahan
v.
STATE.
6 Div. 596.
Court of Criminal Appeals of Alabama.
October 14, 1986.
Rehearing Denied November 12, 1986.
Certiorari Quashed June 19, 1987.
*1181 Carl Wade Robinson, Bessemer, for appellant Ronnie Mahan.
Dan C. King III, Bessemer, for appellant Dale Mahan.
Charles A. Graddick, Atty. Gen., and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
Alabama Supreme Court 86-272 and 86-273.
McMILLAN, Judge.
The appellants, Dale Elize Mahan and Ronnie Benjamin Mahan, were found guilty of the offenses of rape in the first degree and kidnapping in the second degree. They were sentenced to twenty years in the penitentiary for the kidnapping charge, and thirty-five years for the rape charge, the sentences to run concurrently. The victim was Christmas shopping and was returning to her vehicle, when she was abducted and raped. Upon arriving at her car, one man grabbed her from behind while another grabbed her, and she was forced into her car and blindfolded. She was driven to a location in Bibb County by the two men, who were wearing stockings over their heads. When the car reached its destination, the two assailants began drinking beer and smoking marijuana and forced the victim to participate. The victim was then told to remove her clothing and upon refusal, she was burned with a cigarette, and the younger assailant began ripping at her clothing. She was then sexually assaulted and raped a number of times. At one point as she was fighting back, one of the assailants hit her in the face, with his fist breaking off a tooth. After approximately five to six hours, she was driven to the freeway; the abductors left her there in her automobile and told her not to get up, at the risk of harm to her "pretty little girl." A short time later, the victim put her clothes on and drove to the Bessemer Police Station, where pictures were taken of her face and chest area. She was then driven to a hospital, where a rape kit was obtained. Several days later, the victim's purse was found about a mile from where the incident occurred. The victim was later able to identify the two assailants, as they had pushed the stockings over the bridges of their noses during part of the incident.

I
The appellants contend the trial court erred by overruling their challenges of seven of the jurors for cause, based on their preconceived opinions as to their guilt. The appellants' ground for this claim was that seven of the potential jurors responded that they believed that the appellants would have to prove their innocence of the offense of which they had been charged. The trial court followed with an instruction that it was a principle of law and a presumption that defendants are innocent and must be proven guilty beyond a reasonable doubt and to a moral certainty and further that the burden of proof lies with the State. The court also instructed that the jury must not infer anything from the fact that the defendant does not testify. Thereafter, the attorney for Ronnie Mahan made challenges for cause as to the seven potential jury members. In order to determine the validity of the challenges, the trial court again addressed those persons challenged by asking if each and every one understood the principle of law that the burden is on the State and there is no burden on the defendant. The court asked whether anyone would have any difficulty following the instructions that the defendants are presumed innocent and that the burden is upon the State to prove their guilt. In response to the trial judge's request, no potential juror raised his hand to indicate that he would have such difficulty. The challenges were denied and the defendants were given an exception to the ruling.
The trial court must ensure that the case is heard by an unbiased jury. Howell v. City of Birmingham, 383 So.2d 567 (Ala.Cr.App.), cert. denied, 383 So.2d 570 (Ala.), cert. denied, 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980). "A party may have a prospective juror removed for cause if he establishes that the juror has a `fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.' Section 12-16-150(7), Code of Alabama (1975). Proof that the juror has a bias or fixed opinion is not, of itself, sufficient. *1182 The party seeking to have the juror disqualified must further demonstrate that the juror's opinion is so fixed that it would bias his verdict. Clark v. State, 443 So.2d 1287 (Ala.Cr.App.1983); Nobis v. State, 401 So.2d 191 (Ala.Cr.App.1981), cert. denied, 401 So.2d 204 (Ala.1981)." Stringfellow v. State, 485 So.2d 1238 (Ala.Cr.App.1986). See also Gwin v. State, 425 So.2d 500 (Ala. Cr.App.1982). "`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court....'" Ex parte Grayson, 479 So.2d 76, 80 (Ala.1985), quoting Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961). Thus, where a juror states that he has opinions but that he would try the case fairly and impartially according to the law and the evidence and that he would not allow his opinion to influence his decision, it is not error for a trial judge to deny a challenge for cause. Howard v. State, 420 So.2d 828, 831 (Ala.Cr. App.1982). "A juror who brings his thoughts out into the open in response to voir dire questions may be the one who later `bends over backwards' to be fair. The judge was in a position to hear not only the words recorded by the court reporter but also the meaning conveyed by the responding prospective juror. A trial court's ruling on challenge for cause based on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be abuse of discretion." Clark v. State, 443 So.2d 1287, 1289 (Ala.Cr.App. 1983). See also Ex parte Nettles, 435 So.2d 151, 154 (Ala.1983), and cases cited therein. It is clear from the record that the trial court properly exercised its discretion.

II
The appellant alleges that the trial court committed reversible error in holding that the State had established a proper predicate for the introduction into evidence of the result of blood, chemical, and comparison tests of the clothing, rape kit, and blood and urine samples of the victim. The State, however, rebuts this argument by referring to the facts adduced at trial, which it alleges established a valid chain of custody. Ms. Ruby Chilson, a nurse, testified that she prepared the rape kit and took the blood sample. At trial, she identified each of the exhibits and testified as to their being sealed and marked; she further testified that she turned these items over to Officer Steven Crump. Officer Crump verified the testimony of Nurse Chilson and also claimed that he was present when the clothing in question was taken from the victim and further observed the clothing being placed in a bag and sealed. He testified that he turned all this evidence over to Sergeant James Price. Sergeant Price identified this evidence at trial and testified that he turned the evidence over to Ms. Faye Ogletree and Chip Walls, both of whom corroborated these facts. On the other hand, the appellants base their allegations on the failure of Ms. Carol Paden and the warden at the Bessemer City Jail to testify. The clothing was removed from the victim by Ms. Paden and turned over to Officer Crump, who was present at trial to testify to this fact. The evidence was all ultimately turned over to the warden, who failed to testify.
There must have been no break in the chain of custody of the evidence in order to establish a sufficient predicate for admission. Identification and continuity of possession must be sufficiently established to amply assure the authenticity of the evidence. Ex parte Yarber, 375 So.2d 1231, 1234 (Ala.1979). "`The pertinent rule is that articles or objects which relate to or tend to elucidate or explain the issues or form a part of the transaction are admissible in evidence when duly identified and shown to be in substantially the same condition as at the time of the offense.' Dennison v. State, 259 Ala. 424, 427, 66 So.2d 552 (1953)." Mauldin v. State, 402 So.2d 1106, 1110 (Ala.Cr.App.1981). The purpose behind the chain-of-custody requirement is to show to a reasonable probability that *1183 there has been no tampering with the item of evidence. According to the record in the present case, there is a "remote possibility," that any tampering might have occurred, see Mauldin v. State, supra, and because the warden had the evidence in the prison vault after it had already been tested, any possible tampering would have been immaterial. Congo v. State, 409 So.2d 475, 479 (Ala.Cr.App.1981). "A party need not negative the remotest possibility of substitution, alteration or tampering with the evidence. Lynn v. State, 380 So.2d 366 (Ala.Cr.App.1980); Murrell v. State, 377 So.2d 1102 (Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala.1979); Williford v. State, 365 So.2d 1257 (Ala.Cr.App. 1978), cert. denied, 365 So.2d 1258 (Ala. 1979); Thomas v. State, 356 So.2d 210 (Ala. Cr.App.), cert. quashed, 356 So.2d 214 (Ala. 1978)." Mauldin v. State, supra, at 1110. Rather, the evidence "must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain." Slaughter v. State, 411 So.2d 819, 822 (Ala. Cr.App.1981). The testimony and identifications of the State's witnesses were sufficient to establish a proper predicate to admit the evidence.

III
The appellants contend that the trial court committed reversible error in allowing the criminalist to testify as to the results of his analysis of hair samples. The appellants ground their claim on the allegation that a proper chain of custody had not been established and that the degree of scientific accuracy necessary to establish reliability and trustworthiness was not met. The record shows that although the chain of custody objection was timely made, the defense counsel's objection on the grounds of scientific accuracy was not raised until the end of his cross-examination of the witness. The hair which was the subject of the analysis was obtained from the brown bag in which the victim's clothing was placed. We have previously determined that a proper chain of custody was established by the State for this evidence. As to the accuracy of the scientific analysis, the defense counsel's objection on this ground came too late to preserve this issue for review. Watson v. State, 439 So.2d 762 (Ala.Cr.App.1983); Reeves v. State, 456 So.2d 1156 (Ala.Cr.App.1984); Hargrove v. State, 344 So.2d 823 (Ala.Cr. App.), cert. denied, 344 So.2d 826 (Ala. 1977).
Furthermore, expert testimony as to the comparison of hair specimens has previously been allowed in criminal cases. Braggs v. State, 283 Ala. 570, 219 So.2d 396 (1969). "`The question of the competency of a particular witness to testify as an expert is addressed primarily to the trial court. In the absence of abuse of discretion vested in the trial court, we cannot supplant its judgment by our own, even if it were otherwise.' Merriweather v. State, 364 So.2d 374, 375-76 (Ala.Cr.App.), cert. denied, 364 So.2d 377 (Ala.1978) (citations omitted)." Allen v. State, 472 So.2d 1122, 1126 (Ala. Cr.App.1985). "The admissibility of expert opinions is authorized in Alabama by statute which reads: `The opinions of experts on any question of science, skill, trade or like questions are always admissible.' ... The question of whether or not a particular witness would be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for papable abuse." C. Gamble, McElroy Alabama Evidence, § 127.01(5) (3 ed. 1977). The credibility of a witness, and the weight which such witness's testimony is to be accorded, are to be determined by the jury, as are any inconsistencies or contradictions in his testimony. Jones v. State, 469 So.2d 713 (Ala.Cr.App.1985).

IV
The appellants contend that the trial court erred to reversal by denying their motion for mistrial when the jury could not reach a verdict. The record shows that the jury began deliberations in the afternoon and continued them until the next morning, when they informed the judge that they were not able to reach a verdict, because "we have voted 11 guilty and one not guilty. The one not guilty says they would *1184 not change their mind. What procedure do we follow now?" The trial judge encouraged the jury to resume deliberations in an effort to reach a verdict. In no way were his instructions coercive or threatening. Moreover, his encouragement to them included his remark that he would not expect any juror to give up an opinion simply in order to reach a verdict. The jury retired for further deliberations and subsequently presented a note to the court which stated that the juror who had voted not guilty had "completely closed his mind" to any further deliberation and was requesting to be relieved because of nerves. The court polled the jurors as to whether deliberations would be helpful; ten voted in favor of continued deliberations while two were opposed. The deliberations were continued and approximately 20 minutes later, the jury reached a verdict of guilty. While it is true that a trial judge may properly excuse a juror because he is tense, the trial judge's decision concerning the excusal of a juror will not be disturbed in the absence of some clear showing of abuse of discretion, or a showing of bias and prejudice to the appellant; the trial judge is in the best position to observe the mental and physical condition of a juror and determine whether that condition renders him unable to perform his duties satisfactorily. Cork v. State, 433 So.2d 959, 963 (Ala.Cr.App.1983). Also, in the absence of a clear showing of abuse, the trial court's determination concerning the duration of deliberations by the jury, as well as its determination concerning whether or not to grant a mistrial, will not be disturbed on appeal. Hammons v. State, 371 So.2d 986, 988 (Ala.Cr.App.1979). "It is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict so long as it does not coerce or suggest which way the verdict should be returned. McMorris v. State, 394 So.2d 392 (Ala.Cr.App.1980), cert. denied, 394 So.2d 404 (Ala.1981); Allred v. State, 390 So.2d 1109 (Ala.Cr. App.), cert. denied, 390 So.2d 1114 (Ala. 1980); Lake v. State, 390 So.2d 1088 (Ala. Cr.App.), cert. denied, 390 So.2d 1093 (Ala. 1980)." Galloway v. State, 416 So.2d 1103, 1109 (Ala.Cr.App.1982). "In situations such as the one at issue, judges may, and frequently do, encourage jurors to continue deliberating in the hope that some agreement will be reached. This is never improper as long as the judge does not coerce the jury to reach a verdict or suggest to them a particular verdict. Strickland v. State, 348 So.2d 1105 (Ala.Cr.App.1977); Jones v. State, 56 Ala.App. 444, 322 So.2d 735 (1975)." Murry v. State, 455 So.2d 53, 64 (Ala.Cr.App.1983). "Examining the judge's supplemental charge in the `whole context of its setting,' we find that it is not coercive or threatening." Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App.1982). In the present case, the trial court did not threaten or coerce the jury to reach an agreement. McMorris v. State, 394 So.2d 392, 403 (Ala.Cr.App.1980). The trial judge explained to the jury the desirability and importance of reaching a verdict by giving an impartial instruction which never indicated which way the verdict should be returned.
The facts of this case are very similar to those of Channell v. State, 477 So.2d 522 (Ala.Cr.App.1985), wherein the court twice sent the jury back for further deliberations and the appellant, as in the instant case, claimed that if the jury was in fact split 11-1, then the court's actions improperly suggested to the jury that the one holdout should conform to the will of the majority. As this court, per Presiding Judge Bowen, found in Channell, neither the facts of Morris v. State, 465 So.2d 1180 (Ala.1985), nor the facts of Gidley v. State, 19 Ala. App. 113, 95 So. 330 (1923) parallel those of the present case. In Morris, supra, "after two announcements of a deadlock, eventially a verdict, and then a poll of the jurors in which one juror repudiated the verdictthe trial judge directed the jury to resume deliberations and announced that he would be back by five o'clock that afternoon. The Morris court determined that the judge's final comment `clearly put within the minds of the jurors a deadline for returning with a unanimous verdict.' at 1183." Channell v. State, supra, at 531. Furthermore, the judge in Morris, polled the jurors and found that one juror could not say that "guilty" was his verdict. However, in the *1185 present case, the trial judge merely polled the jurors as to whether or not further deliberations would aid them in rendering a verdict, and thereupon, three jurors originally answered no, one of them later changing his answer. Thus, one juror was never singled out.
"In Gidley, the court of appeals found that the trial judge's reference to the numerical division of the jury (11-1), even though accompanied by a disclaimer that the court did not wish the lone dissenter to compromise his convictions, was `an incidious suggestion' to the juror that may have caused him to yield to the majority. 19 Ala.App. at 115 [95 So. 330].
"In the present case, the trial court did not indicate to the jury by his words or conduct that he `expected' a verdict, see Orr v. State, 40 Ala.App. 45, 111 So.2d 627 aff'd, 269 Ala. 176, 111 So.2d 639 (1959), or that he hoped the `holdout' juror would agree with the majority, see Ashford v. McKee, 183 Ala. 620, 62 So. 879 (1913). More importantly, he neither inquired about, see Showers v. State, 407 So.2d 167 (Ala.Cr.App.), rev'd, 407 So.2d 169 (Ala.1981), nor referred to, see Gidley v. State, supra, the 11-1 numerical division when he sent the jury back for further deliberations:
"`It is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verict should be returned and duress or coersion is not used.' Showers v. State, 407 So.2d at 171. We find not even the slightest hint of a suggestion in the court's instructions to the jury that the holdout juror yield to the majority will." Channell v. State, supra, at 531.
AFFIRMED.
BOWEN, P.J., and TAYLOR and TYSON, JJ., concur.
PATTERSON, J., dissents with opinion.
PATTERSON, Judge (dissenting).
I respectively dissent from the majority opinion.
The record reveals the following sequence of events: On June 22, 1984, after trial of the case, the alternate juror was dismissed, and the jury began deliberations at 4:12 p.m. At 6:17 p.m., the judge inquired of the jury if they would like to continue deliberations. One unidentified juror responded that they would like to continue. At 9:17 p.m., the judge again inquired whether they would like to continue or begin deliberations again the next day. After an unidentified juror stated that they had better come back the next day, the judge instructed the jurors to return at 8:30 a.m.
The jury resumed deliberations at 8:35 a.m. on June 23. At approximately 9:00 a.m., a note was sent to the judge containing the following message: "We have voted eleven guilty and one not guilty. The one not guilty says they will not change their mind. What procedure do we follow now?" At 9:33 a.m. the jury returned to the courtroom, still unable to reach a verdict. The trial judge at this time gave an Allen charge and instructed the jurors, "... And when it becomes apparent to you that further deliberations are futile and hopeless, and no possible benefit, let us know and we will come back and I will have other discussions with you...." Thereafter, at 9:36 a.m., the jury returned to the jury room for further deliberations. Prior to returning to the courtroom, the jury sent another note to the judge, stating, "The one juror that voted not guilty has completely closed their mind to any deliberations, discussion, or evidence as presented. It appears they have had a closed mind on the matter for several days. They have requested they be relieved because of nerves." Shortly after the judge received this message, the jury again returned to the courtroom at 11:42 a.m., whereupon the judge polled the jury to determine if the jurors felt further deliberations would be productive. While polling the jury the judge stated, "... Probably, around 12:30, we will plan to take you to lunch. During the deliberations, if it becomes apparent that you're not making *1186 progress, let me know or I will let you stay as long as you want to stay."
At 11:44 a.m. the jury continued deliberations, and at 12:05 p.m., the jury rang the buzzer and returned a verdict of guilty.
Prior to giving the Allen charge to the jury, the trial court was made aware of the fact that eleven of the jurors had voted guilty and one juror had voted not guilty, and that the one juror would not change his mind. At that point, I think it was still proper for the judge to give the charge to the jury and for the jury to continue with their deliberations. However, after another two hours of deliberations, after the judge was again informed that the lone juror had had a fixed opinion for several days and still would not change his mind and was requesting to be relieved because of "nerves," it was error, in my opinion, for the trial court to poll the jury as it did and instruct it to continue. The effect of this polling singled out the lone juror and put him in an embarrassing situation. "It is impermissible for a trial court to instruct in such a manner which tends to embarrass a single juror in holding to his honest convictions." Jones v. State, 92 So.2d 261 (Fla. 1957), cited in Lewis v. State, 369 So.2d 667 (Fla.App.1979). The polling "would, at least, create an embarrassing situation for any single juror whose honest conviction of the guilt or innocence of the accused is contrary to that of his fellow jurors and could very well deter him from asserting and arguing his views." Jones v. State, supra. The cumulative effect of what occurred placed an unbearable pressure upon the dissenting juror to accede to the wishes of the majority. Ex parte Morris, 465 So.2d 1180 (Ala.1985). The fact that the verdict was rendered in such a short timeafter the jury was polled and sent back to the jury room reasonably shows that the verdict was not uninfluenced by what had transpired. It is so likely here that the verdict was coerced that it should not be allowed to stand. See Gidley v. State, 19 Ala.App. 113, 95 So. 330 (1923).