JAMES H. FAULKNER,
Retired Justice.
In a two-count indictment, Gregory Towner was charged with the capital murder of Maebell Wunderlich during the course of the theft of her automobile, in violation of Ala.Code 1975, § 13A-5-40(a)(2), and the capital murder of Maebell Wunderlich during the course of the rape or attempted rape, in violation of Ala.Code 1975, § 13A-5-40(a)(3). The jury found Towner guilty of the two capital offenses as charged in the indictment, and the court sentenced Towner to two concurrent terms of life imprisonment without the possibility of parole. Although 12 issues are raised on appeal, because we find reversible error we shall only address one issue.
Towner contends that the trial court committed reversible error in charging the jury during the guilt phase of the trial as to the actual sentence Towner would receive if he was convicted of a capital offense. We agree.
Approximately 50 minutes after the jury had begun deliberating to determine Town-er’s guilt or innocence, the jury returned to the courtroom and the following occurred:
“THE COURT: You’ve asked two questions here, and one of them we may have discussed with some of you individually Monday when we were asking you some questions about attitudes.
“To answer your first question the answer is yes, in the event you found from the evidence beyond a reasonable doubt and to a moral certainty that the defendant was guilty of one or both of the capital offenses there would be a second hearing held.
“At that time evidence would be offered and the jury would be called upon to make a decision into two possible punishments, one is life without parole and one the death penalty.
“The jury’s verdict in that situation is advisory and the court would make the final decision. To answer your first question there would be other proceedings in regard to imposition of whatever sentence you felt was appropriate under the circumstances of this case.
“I will give you instructions that specifically relate to your function at that time. In regard to your second question, you would not be involved in the sentencing of any non-capital guilty verdict.
“Does that answer your question?
“THE JURY: Yes, sir.”
The jury then returned to the jury room and resumed deliberations. Approximately one hour and forty minutes later, the jury returned to the courtroom with more questions and the following occurred:
“You have asked two questions here. And perhaps the best way to answer the question is if you find the defendant guilty of the non-capital offense then the court is the only — the judge is the only one that has anything to do with sentencing.
“You won’t have anything at all — no input into sentence. That is the responsibility of the judge in the event of a conviction for any offense in the State of Alabama. Other than a capital offense, the sentencing is left up to the judge.”
The jury then resumed deliberations, recessed for dinner, and returned to the courtroom where the court suggested that the jury adjourn for the evening and that it resume deliberations in the morning. An unidentified juror stated to the court that the jurors were “at a serious impasse right now” and that adjournment was a good idea.
The jury returned for further deliberations the following morning, and after approximately 45 minutes returned to the courtroom, where the following occurred:
“THE COURT: Good morning, Ladies and Gentlemen. I have received a note from you this morning. And I would be less than honest if I didn’t say it was a disturbing note from the Court’s perspective in that you’ve indicated in your note here that you’re unable to reach a verdict in this case.
[[Image here]]
“Judges are in a very awkward situation at this particular point because I can’t comment on the case very much to you no more than what I’ve done. But if there are any legal questions I might try *546 to answer for you I will be happy to do that. I can’t discuss the facts with you, of course, or discuss the facts with you or respond to questions about that.
[[Image here]]
“Do you have a question, sir?
“UNIDENTIFIED JUROR: I think he has one.
“UNIDENTIFIED JUROR: Yes. We would like to know — we would like to know— ... how can I put this?
“If we convict him of — on the counts less than capital murder, what’s the law — what is the sentencing on that? Do you understand my question, Judge?
“THE COURT: Yes, sir. I discussed this with the lawyers yesterday. And I really believe that the verdict, what we call the non-capital murder, that rape and robbery would be inconsistent verdicts.
“Because if you find that the death was caused during the commission of rape in the first degree or robbery in the first degree then those offenses really mesh or meld to form one offense.
“So I don’t think you would be facing three consecutive sentences if that is what you’re talking about. In that regard, and I told you that you would not have anything to do with punishment in regard to that. On the other hand, if a finding was beyond a reasonable doubt and to a moral certainty that the defendant was guilty of the capital offense there are two possible sentences in that case.
“One is a sentence of life without parole, and that means life without parole, and the other is a sentence of death. And that would be a jury’s recommendation to the court on that.
“UNIDENTIFIED JUROR: Could I ask a question? On the jury’s recommendation, is that considered pretty strong in the verdict?
“THE COURT: Let me say this. Your finding of fact must not be influenced by what you think the Court is going to do in sentence. Because your job is to find the truth. And my job is to rule and apply the facts to the sentence.
“And you have a function and I have a function. I would imagine that if I was a juror in a case that would be a question, a disturbing question perhaps, in your mind.
“And again the lawyers and I have addressed this before you came out here because you’re not the first jury that has been faced with the difficult decision that you face in a case of this type.
“Before I say anything, my remarks must not be construed by you to indicate you should find the facts in any particular way. My remarks have nothing at all to do with what you find the facts to be.

“But in the event you were satisfied that the truth in this case was that the defendant was guilty of one or more capital offenses, the State would waive the request to impose the death penalty in this case and the sentence would be a life without parole sentence.

“But that has nothing to do with your fact-finding situation. Don’t decide this case based on that result because that in and of itself is a drastic result. I don’t want to belittle or make light of that possible sentence.
“But your task really as a jury is to at this point put aside the issue of punishment and to find the truth in this case. And the system only works when each component part does their job or my job.
“We each have a role and function. Your job is to find the truth in this case. And then once the truth is found then if there is another part of the trial to be involved with we will be involved. If not then your verdict is final.
“I will ask you to step back to the Jury room and resume deliberations. Let me say this before you go back. I am very reluctant to declare a mistrial in this case, but on the other hand I’m not going to require 12 adults to sit back in a room in a futile, fruitless process.
“When you’re sure you can’t do anything I will let you go. But please be sure because you know what will happen will be a new trial.
*547 “UNIDENTIFIED JUROR: Judge, would you say again what you said about the death penalty and the State.
“THE COURT: In the event this jury, and for no other reason that the facts support it, returned a verdict of guilty of the capital offense in this case, the State has agreed not to request a further hearing in regard to the death penalty before the court.
“In other words, if you come back with life without parole that is what it will be. But I can’t emphasize this too many times, you have to find the truth and that has nothing to do with the facts in this case. Okay.”
(Emphasis added.)
The court then entertained objections to its charge outside the presence of the jury, and defense counsel strenuously objected to the court’s instruction to the jury that because the prosecutor had waived a death penalty hearing, Towner’s sentence would be life imprisonment without parole if he was convicted of a capital offense. Counsel argued that this charge not only unfairly commented on the evidence but also invaded the province of the jury by revealing to the jury the position of the State of Alabama with regard to the death penalty in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Art. I, § 1 and 1 of the Alabama Constitution.
The judge responded that although he had “some misgivings” about his instructions, he was trying to avoid a mistrial, and he overruled the objections.
The jury then returned to the courtroom with the same question regarding sentencing, and the following occurred:
“THE COURT: Ladies and Gentlemen, the last question you’ve asked me is one I thought I addressed the last time you were out here.
“UNIDENTIFIED JUROR: Some didn’t understand it.
“THE COURT: To be honest with you I don’t feel like I can say anymore about that because you have to realize that the factfinding function is separate from the other function.
“I don’t want you to infer or get the implication that the two are related. The jury’s responsibility is to apply the facts to the law. I have explained to you that in the event there was, and you heard this from the very first day in voir dire, that in the event there was a capital verdict rendered there would be a sentencing hearing [and] that the jury would have two options.
“I indicated to you the last time you were out here that the State has waived or would not offer evidence to support the more drastic of those two findings. That is really about all I can say.
“I would like to emphasize again that your finding of fact, you should not decide the facts of this case speculating on the verdict because that combines two things that really don’t go together.
“Your job is to find the truth and the rest of the trial will proceed if there is a rest of the trial depending on what you find the facts to be. Thank you.
“UNIDENTIFIED JUROR: Like I say I heard you the first time when we was in here. But like I — we, didn’t exactly understand. So I would you know as close as you can come to it try to explain to me one more time the last when we was in here before about — well, I will ask the question if you can answer it, if not just do it.
“If we the jury, I know you said we shouldn’t be concerned about certain things, but still I have got to ask so I can understand. If we the jury recommend life in prison without parole would that be the final decision or would the final decision be the judge’s?
“THE COURT: All right. To answer your question, if you use the word could, then the judge is always the decision in inducing sentence. In this case it has been made as clear as I can make it that if the jury made that recommendation there would be no other evidence offered to try to overturn that jury recommendation.
“UNIDENTIFIED JUROR: I understand.”
*548 The jury then resumed deliberations, the trial court overruled defense counsel’s objections to his last instructions, and approximately six minutes later, the jury returned with verdicts of guilty with respect to the two capital offenses charged in the indictment.
Under Alabama law, “a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used.” Showers v. State, 407 So.2d 169, 171 (Ala.1981).
“A crucial assumption underlying the jury system is that juries will follow the instructions given them by the trial judge.” Dobard v. State, 435 So.2d 1338, 1346 (Ala.Cr.App.1982), affirmed, 435 So.2d 1351 (Ala.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984).
Under Alabama law, a defendant accused of a capital offense is entitled to a trial in which the determination of guilt or innocence is bifurcated from the sentencing hearing. Ala.Code 1975, §§ 13A-5-43 and -45. In a bifurcated scheme, where guilt is determined separately from punishment, there is minimal risk that the jury will use its power to determine guilt to make a de facto punishment decision. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).
In the case sub judice, the record reflects that the trial court erroneously charged the jury on sentencing during the guilt phase of Towner’s bifurcated trial, and that these improper instructions suggested to the jury what type verdict to reach. The fact that the jury, which had been hopelessly deadlocked only moments before, returned guilty verdicts on both capital offenses only minutes after hearing the court’s highly improper comments on sentencing clearly indicates the highly suggestive nature of the comments. Ex parte Giles, 554 So.2d 1089 (Ala.1987); Ex parte Morris, 465 So.2d 1180 (Ala.1985); Mahan v. State, 508 So.2d 1180 (Ala.Cr.App.1986), cert. quashed, 508 So.2d 1180 (Ala.1987).
We, therefore, hold that the trial court committed reversible error in charging the jury during the guilt phase of the trial as to the actual sentence Towner would receive if he was convicted of a capital offense.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the Court.
The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.