I respectfully dissent from Part II of the majority opinion which holds that the court's Allen charge was not impermissibly coercive. The relevant facts are as follows:
The jury began its deliberations at 3:55 p.m. Thursday, November 5, and was released for the evening at 5:10 p.m. They resumed deliberations at 9:05 a.m. Friday morning, recessed for lunch, received further instructions from the court pursuant to their request for a re-definition of "circumstantial evidence," and deliberated until 4:10 p.m. Friday, November 6.
At that time, the court commented that the jurors looked "tired" and could use a rest over the weekend, and that he himself was sick with the flu. He instructed the jury to return for further deliberations at 9:00 a.m. Monday morning, November 9.
Juror C.C. then asked to speak to the judge privately. She informed him that she and her family were scheduled to leave for an overseas vacation trip on Sunday, November 8, that the trip was already paid for, and that it had been planned for a year. The trial judge brought all the other jurors back into the courtroom, explained Juror C.C.'s dilemma, and asked the jurors to report for further deliberations the next morning, Saturday, November 7.
The jurors deliberated from 9:00 a.m. until 11:50 a.m. Saturday morning and then informed the court that they were unable to reach a verdict. The judge told the jury that he would not accept that decision at that time, instructed them to break for lunch, and asked them to report to the courtroom for further instructions at 1:05 p.m. At 1:05 p.m., the court gave a modified version of the Allen charge, and at 1:45 p.m., the jury retired to deliberate. The jury announced its verdict of guilt less than one hour later, at 2:40 p.m.
On motion for new trial, defense counsel submitted the affidavit of Juror C.C. that she had a reasonable doubt of the appellants' guilt but, because of her impending trip and the court's Allen charge, she felt pressured to conform to the will of the majority of the *Page 314 
jury who believed the appellants guilty. I agree with the majority's conclusion that the affidavit was inadmissible to impeach the verdict, but I believe that even if one disregards the affidavit, it is clear that under all the circumstances of this case, the trial court's Allen charge was impermissibly coercive.
In Ex parte Morris, 465 So.2d 1180 (Ala. 1985), the Alabama Supreme Court held that whether an Allen charge is coercive must be evaluated in the "whole context" of the case. 465 So.2d at 1183. The Morris court examined all the surrounding circumstances of that case but was particularly troubled by the fact that the trial court "clearly put within the minds of the jurors a deadline for returning with a unanimous verdict." 465 So.2d at 1183 (emphasis added).
In McGilberry v. State, 516 So.2d 907, 910 (Ala.Cr.App. 1987), this Court held that an Allen charge was not coercive because, unlike the trial judge in Ex parte Morris, the circuit judge took pains to avoid setting a deadline for a verdict. InMcGilberry, the trial court said that he understood that one of the jurors had a business trip he needed to make and he didn't want "that pressure to be creating a problem" so he offered to "put [the jurors] in recess until such time as [the other juror] could get back from [his trip]." 516 So.2d at 909. See also United States v. Graham, 758 F.2d 879, 882 (3d Cir.) (wherein the trial court instructed a deadlocked jury, which had previously requested to be dismissed early on Friday afternoon for the Jewish holiday of Yom Kippur, that "[t]here are no time deadlines within which you must reach your verdict"), cert. denied, 474 U.S. 901, 106 S.Ct. 226, 227,88 L.Ed.2d 226, 227 (1985); United States v. Bottom, 638 F.2d 781,788 (5th Cir. 1981) (wherein the court recognized that an important factor in determining that the Allen charge was not coercive was that "no deadline was set for the jury's decision"); United States v. Taylor, 530 F.2d 49, 51 (5th Cir. 1976) (wherein the court held that "time pressures . . . created by a variety of factors. . . . could have coerced members of the jury").
In this case, it is clear that the jurors were operating under a deadline for rendering their verdict. They had already been asked to deliberate on Saturday despite the fact that they were "tired" and the judge was sick, because of Juror C.C.'s inability to return Monday. Clearly, they were aware that their verdict had to be returned Saturday because Juror C.C. was leaving for an overseas trip on Sunday.
The majority opinion recognizes that the trial judge departed from the standard Allen charge in encouraging the jury to reach a unanimous verdict, and it notes that the "better practice, when charging a deadlocked jury, is to use the Alabama Pattern Jury Instruction." Many courts have decided that "any variation from the classic Allen language [or the approved Pattern Charge] will be subject to intense scrutiny." See, e.g., UnitedStates v. Taylor, 530 F.2d at 51. The heightened scrutiny is due "where the trial judge strays from these recognized parameters" and the "charge may be plausibly read as more coercive than the standard." United States v. Cheramie,520 F.2d 325, 330 (5th Cir. 1975).
In the present case, the following portion of the court's instruction, which constituted a homespun departure from the Pattern Charge, could "plausibly be read as more coercive than the standard":
 "My grandfather told me a lot of things that the older I get I see the wisdom of, but he would tell me about one particular man that I would see on the courthouse square down in Clay County, Alabama, as I'd sit on a feedsack sucking on a popsicle on a hot summer day with my grandfather. 'Son, that man is like a mule. You have to hit him between the eyes with a 2 by 4 just to get his attention.'
 "Well, now, if any of you are being mulish, I am saying to you that you must not be controlled by mere pride of judgment or opinion. Examine your differences in a spirit of openness, fairness, consideration for the points of view of other jurors, candor and cooperation. Do not adhere to an opinion merely through mulish stubbornness. Your job in that jury room is not to champion your own position as in combat. Rather, it is to reach a unanimous verdict if at all possible." R. 682-83.
The charge was more coercive than the standard because it "admonish[ed] the minority *Page 315 
[jurors] to consider yielding to the majority . . ., but never admonish[ed] the majority to consider yielding to the minority." See United States v. Robinson, 953 F.2d 433, 436-37
(8th Cir. 1992). The court charged:
 "A juror, a minority of jurors, dissenting from the majority position, should consider whether a position in his or her own mind is a reasonable one when it makes no impression on the minds of so many other jurors. While a minority should not, cannot, and will not be coerced by this court into agreement with the majority, a minority should seriously ask themselves whether they may not reasonably and, indeed, ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they have been deliberating.
 "To be even more blunt about it, if you are part of a small minority for acquittal, you should reassess whether your doubts are truly reasonable and whether you are the only one who is right and all the others wrong. Likewise, if you are part of a small minority voting for conviction, you should reassess the evidence and determine if it really reveals what you believe it reveals and whether you are the only one who is right and all the others wrong." R. 683-84.
The court's modified Allen charge was, in my opinion, impermissibly coercive and, for that reason, the appellants are entitled to a new trial.